Donnie A. LeBLANC, Plaintiff-Appellee,

v.

PETCO, INC., et al., Defendants,

v.

AMERICAN HOME ASSURANCE COMPANY, Intervenor-Appellant.

No. 80-3468.

United States Court of Appeals, Fifth Circuit. Unit A

June 12, 1981.

C. G. Norwood, Jr., Scott E. Silbert, New Orleans, La., for intervenor-appellant.

Thompson & Sellers, Charles M. Thompson, Jr., Dennis R. Bundick, Abbeville, La., for plaintiff-appellee.

Before CHARLES CLARK and GEE, Circuit Judges, and SPEARS,* District Judge.

GEE, Circuit Judge:

Atlantic Pacific Marine Corporation ("Atlantic Pacific") contracted to drill an oil well for Atlantic Richfield Company ("ARCO") on the outer continental shelf off the Louisiana coast.[1] The Atlantic Pacific/ARCO contract required Atlantic Pacific to secure in all insurance policies obtained by it with respect to the contract a waiver of any right of subrogation the insurer would otherwise have against ARCO. Atlantic Pacific secured its Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C. § 901 et seq., coverage from the appellant, American Home Assurance Company ("American Home"); the policy contained the required waiver of American Home's right of subrogation against ARCO.

Appellee, Donnie A. LeBlanc, an employee of Atlantic Pacific, was injured while working with a set of rotary tongs on a fixed platform owned by ARCO. American Home paid to or for the benefit of LeBlanc a total of $18,615.86 in compensation benefits and medical expense payments. LeBlanc filed suit against numerous defendants, including ARCO, Petco, Inc. ("Petco"), the supplier of the tongs, and B.J. Hughes, Inc. ("Hughes"), the manufacturer of the tongs. American Home intervened, asserting its compensation lien for the $18,615.86 it had paid LeBlanc. Prior to trial LeBlanc settled with ARCO, Hughes, and Petco for $50,000. The settlement stipulated that these three defendants were jointly liable to LeBlanc; under its terms each has paid LeBlanc one-third of the $50,000. Because LeBlanc and American Home were unable to agree on the amount of reimbursement due the insurer, the settlement further provided that any recovery subsequently secured by American Home would be paid by LeBlanc.

American Home and LeBlanc then proceeded to trial, the insurer claiming a right to reimbursement for the full $18,615.86 it had paid to or for the benefit of LeBlanc. The district court first reduced the amount claimed by one-third because American Home had waived its right of subrogation against ARCO, one of the three joint obligors. The trial court then reduced American Home's claim for the remaining $12,410.59 by one-third of that figure and awarded that amount, $4,136.86, to LeBlanc's attorney in partial payment of his fee. American Home appeals. Finding that the trial court erred in making either reduction we reverse and direct that judgment be rendered in favor of American Home for the full amount of its compensation lien.

As for the attorney's fee issue, the trial court, properly relying on our decision in *Mitchell v. Scheepvaart Maatschappij Trans-Ocean*, 579 F.2d 1274 (5th Cir. 1978), stated that "where the compensation carri-

---

* District Judge of the Western District of Texas, sitting by designation.

1. The original parties to the contract were ARCO and Walker-Huthance Offshore Co. Walker-Huthance assigned this contract to Atlantic Pacific, which assumed all obligations under the contract with ARCO.

er simply intervenes in the plaintiff's suit against a third party tortfeasor, the plaintiff's attorney may be awarded attorney's fees out of the intervenor's recovery on a quantum meruit basis." Subsequent to the trial court's decision, the United States Supreme Court held in *Bloomer v. Liberty Mutual Insurance Co.*, 445 U.S. 74, 100 S.Ct. 925, 63 L.Ed.2d 215 (1980), that under the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C. § 901 et seq., no such reduction in the compensation lien is to be made. Accordingly, the trial court erred in reducing American Home's compensation lien for a portion of LeBlanc's attorney's fees.

■ The trial court's holding that American Home's compensation lien should be reduced by one-third because the insurer waived its right of subrogation against ARCO, one of the three joint obligors, is attacked by American Home on the ground that without regard to its right to the proceeds paid LeBlanc by ARCO, it is entitled to full reimbursement of the $18,615.86 from the $33,333.33 paid to LeBlanc by Petco and Hughes. American Home argues, and counsel for LeBlanc conceded at oral argument, that if LeBlanc had sued only Petco and Hughes and had recovered more than $18,615.86 from them American Home would have been entitled to full reimbursement. According to American Home, LeBlanc's decision to join ARCO as a defendant and his recovery of additional damages from ARCO can have no effect on American Home's rights in the proceeds received by LeBlanc from Petco and Hughes. We can only agree.

LeBlanc attempts to avoid this result by relying on the rule of Louisiana law that the release of one solidary obligor with an express reservation of rights against the others requires a pro rata reduction in the amount owed by the remaining solidary obligors. La.Civ.Code art. 2203.[2] The contention is that ARCO, Petco, and Hughes are solidary obligors; that a waiver of a right of subrogation is equivalent to a release; and thus that American Home's recovery must be reduced by one-third. If American Home's waiver of its right of subrogation against ARCO were the equivalent of a release, LeBlanc's argument might have merit. Since, however, the waiver in this case cannot be equated with a release, we reject the argument.

In Louisiana, but for article 2203 a release would adversely affect the remaining solidary obligors. Their right to contribution from the released tortfeasor would be defeated by the release because their right to contribution exists solely as a result of their being subrogated to the rights of the creditor against other solidary obligors; where one solidary obligor is released, the creditor has no rights against him to which the remaining obligors may be subrogated. Thus, the remaining obligors would be left without a right of contribution against the released obligor. *See Danks v. Maher*, 177 So.2d 412 (La.Ct.App.1965). In contrast, American Home's waiver of its right of subrogation against ARCO had no effect whatever on the relative liabilities of ARCO, Petco, and Hughes to LeBlanc; these defendants have already made equal one-third payments in satisfaction of the $50,000 settlement made with LeBlanc, and the outcome of this suit will have no effect on them. Accordingly, we decline to treat the waiver of subrogation in this case as a release under article 2203.[3]

---

2. American Home argues that the Supreme Court's decision in *Bloomer v. Liberty Mut. Ins. Co.*, *supra*, makes clear that federal law "demands that the employer/carrier be reimbursed out of the proceeds of any settlement of judgment obtained by the injured employee against a third party." To the extent that Louisiana law dictates a different result, American Home, citing *Rodrigue v. Aetna Cas. & Sur. Co.*, 395 U.S. 352, 89 S.Ct. 1835, 23 L.Ed.2d 360 (1969), contends it is inconsistent with federal law and

thus cannot be applied. In light of our view that art. 2203 is not inconsistent with American Home's reading of *Bloomer* on the facts presented by this case, we need not determine what result would be reached if Louisiana law did call for a reduction in the compensation lien.

3. We do not imply that a waiver of a right of subrogation can never be treated as a release under art. 2203. If LeBlanc had not sued ARCO, Petco, and Hughes, American Home

The judgment of the district court is RE-VERSED and the case REMANDED for further proceedings consistent with this opinion.

REVERSED and REMANDED.

SPEARS, District Judge, Dissenting:

I agree, of course, that the decision of the district court on the question of attorney's fees awarded to LeBlanc's counsel must be reversed. However, I would affirm the trial court's action in deducting one-third (⅓) of American Home's claim for reimbursement before awarding it the balance, and to that extent I respectfully dissent.

The majority has chosen to ignore a substantial part of the pertinent case law, and make its decision on the basis of a "contrast" between the rights of solidary obligors, "but for" Article 2203,[1] and the effect of American Home's waiver of its right of subrogation on the relative liabilities of ARCO, Petco and Hughes to LeBlanc. Thus, by erroneously adjudicating this controversy as of the time the proceeds of the settlement came into LeBlanc's hands, rather than pursuant to the legal rights of LeBlanc and American Home, as plaintiff and intervenor, separate and apart from the settlement itself, the majority would circumvent the rights of LeBlanc, and permit American Home to recover the entire amount of its claim (a situation that could not have existed if a trial to judgment had taken place) and thereby do indirectly what it could not have done directly.

Aside, therefore, from the questionable nature of the premises utilized by the majority in its "contrast" syllogism, is the simple fact that American Home's rights are derivative of the employee's cause of action. In order to assert its compensation lien,

American Home exercised its right to intervene in this lawsuit. If LeBlanc had received nothing, there would have been no reimbursement whatever to American Home. As it is, since ARCO, together with Petco and Hughes, the other two solidary obligors, were all parties to the suit, the law requires that any recovery by American Home would have to be reduced by one-third.

The Courts have long recognized an independent right of subrogation in favor of employers and their carriers who voluntarily pay compensation to an injured employee without a formal award. *The Etna*, 138 F.2d 37 (3rd Cir. 1943); *Allen v. Texaco, Inc.*, 510 F.2d 977 (5th Cir. 1975). However, as above indicated, this right of subrogation is deemed to be wholly derivative of the employee's right of action against third parties. The employer-carrier's rights are properly asserted through intervention in the employee's suit for the purpose of placing a lien on the recovery for compensation benefits previously paid. In *Allen* this Court held that a waiver of subrogation rights by a compensation carrier barred a lien against and participation in the proceeds of a settlement between the injured employee and the third party tortfeasor. *"It is fundamental"*, noted the Court, *"that a lien does not exist without a right or obligation to support it"*. (Emphasis added). *Id.* at 981.

As in *Allen*, the only right which American Home had to the proceeds of the settlement with the third party tortfeasors was the right of subrogation to which it succeeded as insurer. Consequently, when American Home waived its right of subrogation against ARCO, it necessarily waived the lien which it claims to assert to the proceeds paid into the recovery fund by

---

would have been subrogated to his rights against them. 33 U.S.C. § 933(b), (h). Suit by American Home against ARCO, however, pre-sumably would have been precluded by the waiver of its right of subrogation against ARCO. We leave for another day the question of whether American Home's recovery against Petco and Hughes would have been reduced by one-third. *See* n.2, *supra*.

1. La.Civ.Code, Art. 2203 provides:

"The remission or conventional discharge in favor of one of the co-debtors *in solido*, discharges all the others, unless the creditor has expressly reserved his rights against the latter.

"In the latter case, he cannot claim the debt without making a deduction of the part to him to whom he has made the remission."

ARCO. *See, e. g., Petro-Weld v. Luke,* 619 F.2d 418, 421 (5th Cir. 1980) (although the waiver precluded reimbursement for the benefits already paid, it did not prevent future compensation benefits determined according to the statutory set-off); *Capps v. Humble Oil & Refining Co.,* 536 F.2d 80, 81–82 (5th Cir. 1976) (carrier which had agreed to waive its rights of subrogation could not avoid the consequences of its agreement, because it had no other rights independent of the right of subrogation for reimbursement); *Stewart v. Cran-Vela Rental Co.,* 510 F.2d 982, 984–985 (5th Cir. 1975) (waiver of subrogation by a carrier precludes the carrier from asserting a compensation lien against recovery by employee in a suit against third party tortfeasor).

The effect of the trial court's ruling here was to treat the waiver as a release of ARCO, one of the three solidary obligors, and require a pro rata reduction in the amount owed by the remaining obligors, without requiring the employee to make up the difference. *See Danks v. Maher,* 177 So.2d 412 (La.App. 4th Cir. 1965); La.Civ. Code, Art. 2203.

The majority postulates that if LeBlanc had sued only Petco and Hughes, and had received more than the amount claimed by American Home from them, American Home would have been entitled to full reimbursement. This necessarily presupposes that Petco and Hughes were the only solidary obligors; however, the fact remains that there were three—not two—solidary obligors. Under Louisiana law, when the combined negligence of two or more parties contributes to and results in an injury, they are deemed joint tortfeasors, and are liable *in solido* to the injured party. *Lowenburg v. Labor Pool of America,* 296 So.2d 846 (La.App.), *writ denied,* 300 So.2d 891 (La. 1974). So, even if LeBlanc had sued only Petco and Hughes, it is a virtual certainty that ARCO would have been impleaded under Rule 14, F.R.Civ.P., or joined as a party under Rule 19, F.R.Civ.P., and if the case had proceeded to judgment against all three, Article 2203, in either situation, would have limited American Home as Intervenor, to only two-thirds of the total amount it sought.

At no time did ARCO voluntarily relinquish its right to the waiver of subrogation by American Home. Even when the settlement agreement was reached, the amount American Home was entitled to receive was left for resolution by the court. However, the majority appears to believe that the settlement has somehow resurrected and breathed new life into a lien that had ceased to exist, and changed the relative rights of the parties to the extent that the carrier would be entitled to reimbursement in full for the compensation it paid, whereas, the injured employee would have to pay out of his pocket that which the carrier had specifically agreed to forego. With this I cannot agree.