637 So.2d 825 (1994)
Jerry LEWIS
v.
DIAMOND SERVICES CORPORATION, et al.
No. 93 CA 1150.
Court of Appeal of Louisiana, First Circuit.
May 20, 1994.
*826 James E. Cazalot, Jr., New Orleans, for plaintiff Jerry Lewis.
Nicholas F. Larocca, Jr., Morgan City, for defendant-appellee Diamond Services Corp.
Philip E. Henderson, Houma, for defendants-appellants Crown Oilfield Services, Inc. and The Gray Ins. Co.
Before FOIL, PITCHER and PARRO, JJ.
PITCHER, Judge.
Crown Oilfield Services, Inc. (Crown) appeals the trial court's granting of a motion for summary judgment filed by Diamond Services Corporation (Diamond). The trial court ruled that the Louisiana Oilfield Anti-Indemnity Act (LSA-R.S. 9:2780) was not applicable to the case at hand. We affirm.

FACTS
On March 18, 1991, Diamond entered into a "Maritime Services AgreementMarine Services" with Crown to provide various services. The contract contained reciprocal indemnity provisions.[1]
On May 7, 1991, pursuant to this agreement, Jerry Lewis (plaintiff), a welder, was assigned to Diamond's Barge, D-85. Plaintiff and others were to perform certain repairs and structural work on a one-legged platform located on the outer continental shelf off the coast of Louisiana. The existing deck of the platform was to be removed and a new deck was to be installed. Welding and *827 cutting were necessary for both the removal of the existing deck and for the installation of the new deck.
According to plaintiff, he was transported to the barge by crew boat. The barge was moored next to the platform and served as a base for the construction project. Plaintiff boarded the platform from the barge in order to perform cutting operations on the existing deck. Plaintiff alleged that he fell into the water while traversing a scaffold board on his return from the platform to the D-85. Plaintiff claims that the board shifted, causing him to lose his balance.
On May 5, 1992, plaintiff filed suit against Diamond. In his petition, plaintiff sought damages for personal injuries allegedly caused by the negligence of Diamond. Lewis also sought remedies under general maritime law. In the alternative, Lewis alleged that he was a longshoreman; therefore, Diamond, as owner and operator of the barge, was liable to him for damages under Section 905(b)[2] of the Longshore and Harbor Workers' Compensation Act (LHWCA).
Diamond answered this petition and filed a third-party complaint against Crown and The Gray Insurance Company (Gray), as the insurer of Crown, seeking indemnification pursuant to the Maritime Services Agreement.
Crown answered Diamond's third-party demand contending that the provision of the contract relied on by Diamond was null by operation of the Louisiana Oilfield Anti-Indemnity Act, LSA-R.S. 9:2780, which basically renders certain indemnity agreements null and void.[3]
Thereafter, Diamond filed a motion for summary judgment on the issue of Crown's obligation to defend, indemnify, and hold Diamond harmless as described in the contract. This motion for summary judgment was based on two arguments: (1) the contract in question was a maritime contract and thus, subject to maritime law; and (2) Section 905(c) of the LHWCA prohibited the application of the Louisiana Oilfield Anti-Indemnity Act.
After a hearing, the trial court apparently determined that Section 905(c) of the LHWCA prohibited the application of the Louisiana Oilfield Anti-Indemnity Act.[4] Accordingly, the trial court rendered judgment granting Diamond's motion for summary judgment and ordering Crown and Gray to defend and indemnify Diamond in this suit.
*828 From this adverse judgment, Crown appeals contending that the trial court erred in ruling that the Louisiana Oilfield Anti-Indemnity Act was not applicable.

SUMMARY JUDGMENT
It is well settled that the granting of a summary judgment is proper only when the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, establish that there is no genuine issue of material fact and that the mover is entitled to judgment as a matter of law. LSA-C.C.P. art. 966; Caballero Planting Co., Inc. v. Hymel, 597 So.2d 35, 37 (La.App. 1st Cir.1992); Insley v. Titan Insurance Company, 589 So.2d 10, 13 (La.App. 1st Cir.1991); Robertson v. Our Lady of the Lake Regional Medical Center, 574 So.2d 381, 384 (La.App. 1st Cir.1990), writ denied, 573 So.2d 1136 (La.1991). Summary judgment is appropriate only when reasonable minds must inevitably conclude that, on the facts before the court, the mover is entitled to judgment as a matter of law. Insley v. Titan Insurance Company, 589 So.2d at 13.
The burden is upon the mover for summary judgment to show that no genuine issue of material fact exists and that, as a matter of law, summary judgment is warranted. Robertson v. Our Lady of the Lake Regional Medical Center, 574 So.2d at 384. It is only after the moving party has shown that there are no genuine issues of material fact and that he is entitled to a judgment as a matter of law that the burden shifts to the party opposing the motion to come forward with specific facts establishing the existence of a genuine issue of fact for trial. Caballero Planting Co., Inc. v. Hymel, 597 So.2d at 37.
Diamond seeks contractual defense and indemnity pursuant to the Maritime Services Agreement which contained reciprocal indemnity provisions, giving each contracting party indemnification for its own negligence. Crown, on the other hand, contends that Diamond's claim is barred by the Louisiana Oilfield Anti-Indemnity Act.
The intent and policy of the Louisiana legislature in enacting the Oilfield Anti-Indemnity Act is expressly set forth in the statutory provision as follows:
The legislature finds that an inequity is foisted on certain contractors and their employees by the defense or indemnity provisions, either or both, contained in some agreements pertaining to wells for oil, gas, or water, or drilling for minerals which occur in a solid, liquid, gaseous, or other state, to the extent those provisions apply to death or bodily injury to persons. It is the intent of the legislature by this Section to declare null and void and against public policy of the state of Louisiana any provision in any agreement which requires defense and/or indemnification, for death or bodily injury to persons, where there is negligence or fault (strict liability) on the part of the indemnitee, or an agent or employee of the indemnitee, or an independent contractor who is directly responsible to the indemnitee.
LSA-R.S. 9:2780 A.
The purpose of the legislation and the policy interest of the state, as noted by the Louisiana Supreme Court in Rodrigue v. LeGros, 563 So.2d 248, 254 (La.1990), is to protect certain contractors, namely those in oilfields, from being forced through indemnity provisions to bear the risk of their principals' negligence. Daigle v. United States Fidelity And Guaranty Insurance Company, 610 So.2d 883, 886 (La.App. 1st Cir.1992).
Under the Outer Continental Shelf Lands Act, the laws of the adjacent state are applicable on the Shelf "[t]o the extent that they are applicable and not inconsistent with this Act [OCSLA] or with other Federal laws and regulations of the Secretary [of the Interior]." 43 U.S.C. Sec. 1333(a)(2)(A).
Diamond contends that the Louisiana Oilfield Anti-Indemnity Act is not applicable here because it is inconsistent with an applicable and controlling federal statute, 33 U.S.C. Section 905(c) of the LHWCA, which provides as follows:
In the event that the negligence of a vessel causes injury to a person entitled to receive benefits under the Act by virtue of section 4 of the Outer Continental Shelf Lands Act, (43 U.S.C. 1333), then such *829 person, or anyone otherwise entitled to recover damages by reason thereof, may bring an action against such vessel in accordance with the provisions of subsection (b) of this section. Nothing contained in subsection (b) of this section shall preclude the enforcement according to its terms of any reciprocal indemnity provision whereby the employer of a person entitled to receive benefits under this Act by virtue of section 4 of the Outer Continental Shelf Lands Act (43 U.S.C. 1333) and the vessel agree to defend and indemnify the other for cost of defense and loss or liability for damages arising out of or resulting from death or bodily injury to their employees.
We find that the Louisiana Oilfield Anti-Indemnity Act is inconsistent with Section 905(c) of the LHWCA. Cf. Heath v. Superior Oil Company, 617 F.Supp. 33, 35-36 (W.D.La.1985); Rigby v. Tenneco Oil Company, 607 F.Supp. 1247, 1249 (E.D.La.1985); Alexander v. Chevron USA, Inc., 623 F.Supp. 1462, 1464 n. 4 (W.D.La.1985), cert. denied, 483 U.S. 1005, 107 S.Ct. 3229, 97 L.Ed.2d 735 (1987). Therefore, the reciprocal indemnity provision in the Marine Services Agreement is enforceable.

CONCLUSION
For the foregoing reasons, the judgment of the trial court, granting Diamond's motion for summary judgment and ordering Crown and Gray to defend and indemnify Diamond in this suit, is affirmed. All costs of this appeal are assessed to Crown.
AFFIRMED.
NOTES
[1] Section VII of the contract provided as follows:

CONTRACTOR shall be responsible for and shall indemnify and hold COMPANY harmless from and against any and all claims, demands or actions for damage, loss or destruction of CONTRACTOR'S property, and the property of CONTRACTOR'S subcontractors, and for claims for injury, illness, disease, death, loss of society, maintenance, cure and wage to or on behalf of CONTRACTOR'S employees, agents or invitees or the employees of its subcontractors arising in connection with this contract without limit and without regard to cause or causes thereof of the negligence of any party including the negligence, active or passive, primary or secondary, of COMPANY or the unseaworthiness or defective condition of equipment or vessels furnished by COMPANY hereunder.
COMPANY shall be responsible for and shall indemnify and hold CONTRACTOR harmless from and against any and all claims, demands or actions for damages, loss or destruction of its property or the property of its subcontractors and for claims for injury, illness, disease, death, loss of society, maintenance, cure and wages to or on behalf of COMPANY'S employee's agent or invitee or the employees of its subcontractors, arising in connection with this contract without limit and without regard to the cause or causes thereof or the negligence of any party including the negligence, active or passive, primary or secondary, of CONTRACTOR or the unseaworthiness of [sic] defective condition of equipment or vessels furnished by CONTRACTOR hereunder.
CONTRACTOR agrees that any policy or policies of insurance it may obtain to protect itself from liability assumed under this contract, except workmen's compensation insurance which is provided for in Section VI hereof, shall be endorsed to provide an unrestricted waiver of its underwriter's or insurer's rights of subrogation in favor of COMPANY and shall be endorsed to name COMPANY as an additional named assured.
In the event any court should hold that any part of this Section IX [sic] of this contract is unenforceable or void or voidable, then it is the express intent of the parties that the remaining or otherwise enforceable provisions are to be deemed nevertheless operative and effective, and the parties agree to be bound to such provisions.
[2] 33 U.S.C. Section 905(b) provides as follows:

In the event of injury to a person covered under this chapter caused by the negligence of a vessel, then such person, or anyone otherwise entitled to recover damages by reason thereof, may bring an action against such vessel as a third party in accordance with the provisions of section 933 of this title, and the employer shall not be liable to the vessel for such damages directly or indirectly and any agreements or warranties to the contrary shall be void. If such person was employed by the vessel to provide stevedoring services, no such action shall be permitted if the injury was caused by the negligence of persons engaged in providing stevedoring services to the vessel. If such person was employed to provide shipbuilding, repairing, or breaking services and such person's employer was the owner, owner pro hac vice, agent, operator, or charterer of the vessel, no such action shall be permitted, in whole or in part or directly or indirectly, against the injured person's employer (in any capacity, including as the vessel's owner, owner pro hac vice, agent, operator, or charterer) or against the employees of the employer. The liability of the vessel under this subsection shall not be based upon the warranty of seaworthiness or a breach thereof at the time the injury occurred. The remedy provided in this subsection shall be exclusive of all other remedies against the vessel except remedies available under this chapter.
[3] LSA-R.S. 9:2780 B provides, in pertinent part, as follows:

Any provision contained in, collateral to, or affecting an agreement pertaining to a well for oil, gas, or water, or drilling for minerals which occur in a solid, liquid, gaseous, or other state, is void and unenforceable to the extent that it purports to or does provide for defense or indemnity, or either, to the indemnitee against loss or liability for damages arising out of or resulting from death or bodily injury to persons, which is caused by or results from the sole or concurrent negligence or fault (strict liability) of the indemnitee, or an agent, employee, or an independent contractor who is directly responsible to the indemnitee.
[4] At the hearing on the motion for summary judgment, Diamond did not argue that the contract in question was a maritime contract and thus, not subject to the Louisiana Oilfield Anti-Indemnity Act.