## Mark WAGNER

### v.

## McDERMOTT, INC., et al.

### Civ. A. No. 93–0715.

United States District Court,
W.D. Louisiana,
Lafayette–Opelousas Division.

Dec. 19, 1994.

Thomas R. Edwards, Domengeaux Wright Moroux & Roy, Lafayette, LA, for plaintiff.

James B. Doyle, Sr., Woodley Williams Fenet Boundreau & Brown, Lake Charles, LA, for defendant.

## *REASONS FOR JUDGMENT*

### Background

DOHERTY, District Judge.

Mark Wagner was employed by Landry Enterprises, Inc. ("Landry") as a welder. At the time of Wagner's accident, Landry loaned Wagner out to Capital Welding & Fabrication, Inc. ("Capital"), who had a Blanket Subcontractor's Agreement with McDermott, Inc. McDermott made a "call out" under this agreement to Capital for laborers to perform welding on a McDermott offshore platform. This Court assumes that because there was no place to sleep or eat on the platform, Wagner slept and ate his meals on a McDermott derrick barge which was adjacent to the platform. No specific reference to this housing arrangement was made in either the Blanket Subcontractor's Agreement or the call out.[1] Wagner allegedly suffered injuries when he slipped and fell on the deck of the barge as he was headed to its restroom facilities.

Wagner filed suit against McDermott, Landry, and/or Capital all under the Jones Act. He also filed an unseaworthiness claim against McDermott as vessel owner alleging he was a seaman. In the alternative, Wagner asserted a 905(b) claim under the Longshore & Harbor Workers' Compensation Act against McDermott as owner of the vessel for vessel negligence. Finally, he asserted in the alternative a general maritime law claim against McDermott as vessel owner. By third party complaint, McDermott filed suit against Capital, Capital's insurers, Storebrand Insurance Company U.K. Ltd. ("Storebrand") and Commercial Union Insurance Company ("Commercial Union"), and Landry pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201. McDermott seeks a judgment declaring that it is entitled to contractual defense and indemnity under the terms of the "Blanket Subcontractor's Agreement" between it and Capital and/or Landry.

Capital, Landry, and Storebrand filed motions for summary judgment seeking dismissal of plaintiff's claims based on his status as a seaman. The Court granted those motions upon finding that Wagner was not a seaman. (Memorandum Ruling, October 18, 1994). Capital, Landry, Storebrand, Commercial Union, and McDermott filed motions for summary judgment as to McDermott's contractual claim. The Court was informed that the primary injury claim settled, so that only the contractual claims asserted by McDermott remain. The Court denied the remaining outstanding motions for summary judgment as to McDermott's contractual claim, and the remaining parties jointly moved the Court for a final ruling on the merits based upon the evidence and briefs submitted. The Court finds that it has jurisdiction over McDermott's contractual claim under its supplemental jurisdiction, 28 U.S.C. § 1367, and under its admiralty jurisdiction, 28 U.S.C. § 1333.

Thus, this Court's judgment concerns only the contractual claims McDermott has as-

---

1. There is a question of fact as to whether the call out was to the platform or the barge; however, neither the Blanket Subcontractor Agreement nor the call out referenced the fact that the barge would be used to house the workers.

serted against Landry, Capital, Commercial Union, and Storebrand. The issues before this Court present a unique and legally interesting question which this Court has not found to have been fully addressed by any court.

## McDermott's Contractual Claims for Defense and Indemnity

McDermott argues that the "Blanket Subcontractor's Agreement" it executed with Capital and/or Landry [2] is maritime in nature or is governed by the LHWCA in its entirety. McDermott maintains that in neither case does Louisiana law apply to void the indemnity provision contained in the contract. McDermott asserts that "the clearest reason McDermott is entitled to indemnity for which it contracted is found in a clear reading of § 905(c) of the LHWCA along with the contract at issue in this case." (McDermott's trial outline, p. 5) Section 905(c) provides in pertinent part:

### (c) Outer Continental Shelf

In the event that the negligence of a vessel causes injury to a person entitled to receive benefits under this Chapter by virtue of section 1333 of Title 43 [the OCSLA], then such person, or anyone otherwise entitled to recover damages by reason thereof, may bring an action against such vessel in accordance with the provisions of subsection (b) of this section. Nothing contained in subsection (b) of this section shall preclude the enforcement according to its terms of any reciprocal indemnity provision whereby the employer of a person

entitled to receive benefits under this chapter by virtue of section 1333 of Title 43 and the vessel agree to defend and indemnify the other for cost of defense and loss or liability for damages arising out of or resulting from death or bodily injury to their employees.

Capital, Landry, Storebrand, and Commercial Union argue that the blanket subcontractor's agreement is a non-maritime contract and that the Louisiana Oilfield Indemnity Act (LOIA) [3] applies by way of the non-maritime contract which is governed by Louisiana law as the land based law applicable to the non-maritime contract or by way of the Outer Continental Shelf Lands Act.[4] They argue further that the LOIA invalidates the indemnity provision at issue.

The indemnity provision in the contract provides:

VIII. A. Subcontractor shall protect, defend, indemnify and hold harmless McDermott, its employees, officers and agents, against all claims, demands or causes of action by Subcontractor, Subcontractor's employees, officers or agents or their successors-in-interest for personal injury or death or property damage or destruction arising out of or in any way related to the performance by Subcontractor of any work covered hereby or by the failure of Subcontractor so to perform, howsoever such personal injury or death or property damage or destruction is caused, including the sole or concurrent fault or negligence of McDermott, its employees,

---

2. McDermott executed identical "Blanket Subcontractor's Agreements" with Capital and Landry. McDermott asserts that the call out was made to Capital; however, the Court finds for the reasons given *infra* that Wagner was Landry's employee.

3. The LOIA provides in pertinent part:

Any provision contained in, collateral to, or affecting an agreement pertaining to a well for oil, gas, or water, or drilling for minerals ... is void and unenforceable to the extent that it purports to or does provide for defense or indemnity, or either, to the indemnitee against loss or liability for damages arising out of resulting from death or bodily injury to persons, which is caused by or results from the sole or concurrent negligence or fault (strict liability) of the indemnitee, or an agent, em-

ployee, or an independent contractor who is directly responsible to the indemnitee. La. R.S. § 9:2780(B)

4. The OCSLA provides in pertinent part:

To the extent that they are applicable and not inconsistent with this act or with other federal laws and regulations of the secretary now in effect or hereafter adopted, the civil and criminal laws of each adjacent state now in effect or hereafter adopted, amended or repealed are hereby declared to be the law of the United States for that portion of the subsoil and seabed, the outer continental shelf, and artificial islands and fixed structures erected thereon, which would be within the area of the state if its boundaries were extended seaward to the outer margin of the outer continental shelf. 43 U.S.C. Section 1333(A).

officers or agents and/or the unseaworthiness of vessels which are owned, operated or chartered by McDermott regardless of whether said unseaworthiness pre-existed the execution of the Agreement.

B. McDermott shall protect, defend, indemnify and hold harmless Subcontractor, its employees, officers and agents against all claims, demands or causes of action by McDermott, McDermott's employees, officers or agents or their successors-in-interest for personal injury or death or property damage or destruction arising out of or in any way related to the performance of the work covered hereby or by the failure to perform same, howsoever such personal injury or death or property damage is caused, including the sole or concurrent fault or negligence of Subcontractor, its employees, officers or agents and/or the unseaworthiness of the vessels which are owned or operated or chartered by Subcontractor regardless of whether said unseaworthiness pre-existed the execution of this Agreement.

### Nature of the Contract

■ McDermott first argues that the contract under which it claims indemnity is a maritime contract and under maritime law, the indemnity provision is valid. In determining whether a contract is maritime, a court should consider several factors as outlined by the Fifth Circuit in *Davis and Sons, Inc. v. Gulf Oil Corporation,* 919 F.2d 313 (5th Cir.1990), *reh'g denied,* 924 F.2d 1054 (1991) and its progeny. *See also Domingue v. Ocean Drilling and Exploration Company,* 923 F.2d 393 (5th Cir.) *reh'g denied,* 940 F.2d 117 (1991), *cert. denied,* 502 U.S. 1033, 112 S.Ct. 874, 116 L.Ed.2d 779 (1992); *Hollier v. Union Texas Petroleum Corporation,* 972 F.2d 662 (5th Cir.1992); *Dupre v. Penrod Drilling Corporation,* 993 F.2d 474 (5th Cir.1993). Those factors include:

1. What does the specific work order in effect at the time of the injury provide?

2. What work did the crew assigned under the work order actually do?

3. Was the crew assigned to work aboard a vessel in navigable waters?

4. To what extent did the work being done relate to the mission of that vessel?

5. What was the principal work of the injured worker?

6. What work was the injured worker actually doing at the time of injury?

*Davis,* 919 F.2d at 316.

■ As in *Davis* and *Domingue,* the contract at issue in the instant case is a "blanket service" contract which was followed by later work orders. The first paragraph of the blanket subcontractor's agreement provides:

I. This Blanket Subcontractor's Agreement sets forth the terms and conditions on which work or services (herein called "work") will be performed by Subcontractor for McDermott from time to time during the effective period hereof, and the provisions hereof shall apply to all work so performed by Subcontractor, regardless of the location therefore, and regardless of whether such work relates to McDermott's property or constitutes work which McDermott is obligated to perform for a third party and sublets to Subcontractor, and regardless of whether such work is covered by a written purchase order or other written instrument or contract (all of which are herein sometimes called "Specific Contract Documents") signed by an officer of McDermott, Inc., provided that a provision in any Specific Contract Document shall prevail over a conflicting provision in this Blanket Subcontractor's Agreement. However, it is understood that this Blanket Subcontractor's Agreement shall apply to work performed by Subcontractor upon verbal request of a representative of McDermott, without the execution of delivery of any Specific Contract Document.

Therefore, this Court "must interpret [the blanket contract and the later work orders] together in evaluating whether maritime or land law is applicable to the interpretation and enforceability of the contract's provisions." *Id.* at 315.

**Factor (1) The Specific Work Order.** The specific work order requesting Wagner for welding services was in the form of a verbal request or "call out." The Court cannot find any written evidence or documenta-

tion of the actual "call out." McDermott asserts that it "called out" a group of welders from Capital to go out to the McDermott **derrick barge, DB–51.** However, Capital and Landry assert that the request was for welders to work on a McDermott **offshore platform.** The plaintiff states in his deposition that his **work station was on the platform.** Under either version of the "call out," Wagner actually performed welding services on the platform.[5]

**Factor (2) The Actual Work Performed.** It is undisputed that Wagner and the other welders called out on this job performed only welding services and only on the McDermott offshore platform.

**Factor (3) Aboard A Vessel.** There is no evidence that the crew called out by McDermott was assigned to work aboard the derrick barge. Moreover, the undisputed facts show that the welders worked exclusively on the platform. The Court has ruled previously in this case that Wagner was not permanently assigned to the DB–51.[6]

**Factor (4) Relationship of the Work to the Mission of the Vessel.** As most recently stated by the Fifth Circuit a "contract related to oil and gas exploration and drilling takes on a salty flavor when the performance of the contract is more than incidentally related to the execution of the vessel's mission." *Dupre v. Penrod Drilling Corp.*, 993 F.2d 474, 477 (5th Cir.1993) (citing *Domingue*, 923 F.2d at 396; *Theriot v. Bay Drilling Corporation,* 783 F.2d 527, 538 (5th Cir.1986)). The Fifth Circuit has also stated that a contract is maritime when the "contract did not merely touch incidentally on a vessel but specifically focused on the use of a vessel to [perform the work]." *Id.* In the instant case, the contract, consisting of the work order and the blanket subcontractor's agreement, did not specifically require nor specifically address the supply and use of a vessel for performance of the welding services, rather it required Landry or Capital to provide welders who worked exclusively on a platform. No specific mention of the use of the vessel where the alleged accident occurred was made in either the Blanket Subcontractor's Agreement or call out.

**Factor (5). Principal Work.** The principal work of Wagner was welding aboard the McDermott platform as previously described.

**Factor (6). Work at the time of injury.** Wagner was not performing any work pursuant to the contract at the time of his injury, but slipped and fell in the washroom facilities of the barge at the time of his injury. Thus, this factor has little relevance in characterizing the nature of the contract. *See Dupre,* 993 F.2d at 478; *Domingue,* 923 F.2d at 398.

After applying the *Davis* factors to the blanket subcontractor's agreement and later verbal work order, this Court finds that the contract is non-maritime.

### Consequences of a Non–Maritime Contract

Capital, Landry, Storebrand, and Commercial Union assert that the contract between Capital and/or Landry is a non-maritime contract and that the LOIA applies by way of the land based law applicable to the contract or by way of the OCSLA, resulting in the invalidation of the indemnity provision. This Court notes that the applicability of the OCSLA or 905(c) to the instant case is problematic; however, this Court believes for reasons given below that the LOIA does apply to the contract. This Court further notes that the Fifth Circuit has held that the LOIA applies when the contract is non-maritime, even when the plaintiff is injured on a vessel (a non-OCSLA situs).[7]

For example, in *Domingue v. Ocean Drilling and Exploration Company,* 923 F.2d 393, 398 (5th Cir.1991), the court held that a blanket service contract followed by an oral work order requesting wireline services on a jackup drilling rig was a non-maritime con-

---

5. There is documentation of Wagner's work with McDermott in the form of McDermott "daily job reports" and "daily time tickets." They reference both the DB–51 and the platform location.

6. The Court further finds in reviewing the evidence that the work order did not reference or

require McDermott to provide a vessel to house the welders during Wagner's work shift.

7. *Domingue v. Ocean Drilling & Exploration Co.,* 923 F.2d 393, 398 (5th Cir.1991).

tract. The plaintiff suffered injuries when he tripped and fell over a piece of equipment located on the deck of the rig. After applying the *Davis* factors, the court held the service contract was non-maritime. It then stated, "Accordingly, LOIA controls to invalidate the indemnity provision of the blanket contract." *Id.* at 398. Therefore, under *Domingue,* arguably, the indemnity provision involved in the instant case is invalid because land based law, here Louisiana law, applies to the non-maritime contract even if as in the case before this Court, the injury occurs on a vessel.

■ However, the Fifth Circuit has also applied the LOIA as surrogate federal law under the OCSLA when the OCSLA applies. For instance, in *Hollier v. Union Texas Petroleum Corp.,* 972 F.2d 662 (5th Cir.1992), the Fifth Circuit held that Louisiana law applied and, therefore, the LOIA applied through the OCSLA. In that case, the plaintiff was killed while transferring from a "stationary jackup vessel" to a well platform. As in the instant case, the primary injury claim settled, so that only the contractual indemnity claims were before the court. The court outlined the following test to determine whether to apply the LOIA as surrogate federal law under the OCSLA:

"1. The controversy must arise on a situs covered by OCSLA (i.e. the subsoil, seabed, or artificial structures permanently or temporarily attached thereto).

2. Federal maritime law must not apply of its own force.

3. The state law must not be inconsistent with federal law."

*Id.* at 665 (citing *Smith v. Penrod Drilling Corporation,* 960 F.2d 456, 459 (5th Cir. 1992)).

■ Under the first factor, the *Hollier* court analyzed "the controversy" to be defined by where the plaintiff's accident occurred. The Court determined that the plaintiff was in physical contact with the platform at the time of injury, thus, the first factor was met. In the case before this Court, Wagner was injured on a vessel in navigable waters. Therefore, under an *Hol-*

*lier* analysis, the "controversy" did not take place on an OCSLA situs. However, under *Union Texas Petroleum v. PLT Engineering,* 895 F.2d 1043, 1047–48 (5th Cir.), *cert. denied,* 498 U.S. 848, 111 S.Ct. 136, 112 L.Ed.2d 103 (1990), the situs requirement could be met when "the locations where the substantial work pursuant to the contract was done were covered situses...." Thus, under *Union Texas,* the OCSLA situs factor is met in the instant case, as the work required by the contract was performed on an offshore platform. However, even if the OCSLA does not apply because the "controversy" took place on a vessel, nonetheless, under *Domingue,* Louisiana law would still apply because the contract at issue is a non-maritime contract and therefore, governed by the applicable land based law.

The second factor under the *Hollier* analysis is met because federal maritime law does not apply to *the issue* at hand, i.e., the indemnity claims under a contract entered into between the parties. In particular, the contract is non-maritime. Under the third factor, the LOIA must not be inconsistent with federal law. Here, the very interesting issue of perspective becomes pivotal. If one frames the issue from McDermott's perspective, its potential liability flows from its role as vessel owner under the general maritime law or 905(b)—plaintiff alleges injury aboard the McDermott vessel and plaintiff is a longshoreman. Consequently, McDermott urges 905(c) also should apply because 905(c) is available federal law and allows reciprocal indemnity agreements between "vessels" and "employers." The application of Louisiana law and in particular the LOIA would prohibit the reciprocal indemnity agreements. If one views the issue from Landry, Capital, and its insurers' perspective, their potential liability as to McDermott's claims flows from the contract and work order entered into with McDermott in which Wagner was requested to perform and was performing welding services on *a platform.* Consequently, Landry/Capital argue the LOIA should apply because the contract to perform welding on a platform is non-maritime. Consequently, Louisiana law applies to govern the non-maritime contract or applies through the OCSLA as surrogate federal law.

Both sides make convincing arguments; however, *the claim which is at issue before this Court* is one for *contractual indemnity.* The *contract was non-maritime* for welding services on a platform. Consequently, either land based law governs the contract [8] or the OCSLA which adopts Louisiana law as surrogate law governs the contract; under either theory, the LOIA would come into play. McDermott is asking Capital and/or Landry to indemnify it *pursuant to the contract for welding services on the platform*—that is the claim before the Court. The fact plaintiff happened to be on a vessel does not change the focus, particularly as neither said vessel nor its use was specifically referenced in the contract. The claim is made pursuant to the contract and the contract is non-maritime; the contract does not specifically reference either the vessel or its use, therefore, the contract is not for vessel services or for work on a vessel.

McDermott, nonetheless, pursues its argument by asserting that the LOIA is inconsistent with applicable federal law, i.e., 905(c). As the indemnity provisions in the contracts are reciprocal in nature, they are enforceable under the clear language of 905(c), and McDermott's tort liability arises either under 905(b) or the general maritime law. However, McDermott's **contractual** liability rests with a non-maritime contract. Consequently, the Court finds itself in the unfortunate situation of interpreting and applying 905(c) and its interplay with the LOIA when a longshoreman is injured on a vessel where he was housed, but was working on a platform under a verbal call out order for welding under a non-maritime contract which does not address either the vessel or the worker's housing on the vessel. This factual situation presents an issue where there is little guidance, as the Fifth Circuit seldom has been faced with cases involving 905(c) of the LHWCA.

### 905(c)

■ The Court begins its analysis of 905(c) by first determining if 905(c) is applicable to McDermott's contractual claim, that is, whether the type of indemnity agreement permitted by 905(c) is present in the contract between McDermott and Capital and/or Landry. As Storebrand points out, 905(c) requires a reciprocal indemnity agreement between the employer and **"the vessel."** [9] In reviewing the evidence and briefs submitted, the Court has concluded that the contract at issue is non-maritime. This Court also finds that what the parties intended by their contract was a contract between Capital and/or Landry as the employer, and McDermott, as **platform owner,** for welding services **on the platform** for the time period of Wagner's shift. In this case, Capital/Landry contracted with McDermott to perform welding services aboard a platform. The dual relationship between McDermott and Capital/Landry was therefore one involving an **employer and a platform owner.** The contract to provide welders could be fully complied with without a vessel and no reference to the use of the vessel to house the workers is made in the contract. McDermott interjected the vessel into the equation, *but not into its contract.* Nor was there a separate contract referencing the use of the vessel to house the workers and defining the intent of the parties as to the allocation of potential liability in the event of injury aboard the vessel.

---

**8.** It is assumed said land based law is Louisiana as no evidence establishing any other state's law has been presented.

**9.** The Court notes that the LHWCA provides a definition for vessel under the Act:

**Unless the context requires otherwise,** the term "vessel" means any vessel upon which or in connection with which any person entitled to benefits under this chapter suffers injury or death arising out of or in the course of his employment, and said vessel's owner, owner pro hac vice, agent, operator, charter or bareboat charterer, master, officer, or crew member.

33 U.S.C. § 902(21).

This definition seems to concern the tort provisions of the LHWCA, as the definition revolves around the place of injury. The Court finds that the facts of this case triggers the clause, "unless the context requires otherwise," in searching for the intent of the parties to this contract. Therefore, the definition of vessel under the LHWCA need not be controlling in interpreting the contract at issue. If the Court were to do so, it would merge the contractual issues with the tort issues involved in this case.

The Court concedes that the general indemnity provision of the master service contract includes generic references to "unseaworthiness of vessels;" however, in the same way that the Court determined the nature of the contract by looking at the contract in conjunction with specific work orders, the Court interprets the applicability of an indemnity provision by looking to the intent of the parties shown in the blanket contract and later work order. McDermott had a master service contract to cover **all work** with all of its approved contractors.[10] However, the law accepts that it is the work order which defines the actual work which was to be performed on any given job.[11] Here, Capital/Landry were to provide welders to work on a McDermott platform.

This Court notes that the limited jurisprudence on 905(c) seems to create, in effect, a separate inquiry of effected contracts, those which are "vessel-related." In *Knapp v. Chevron USA, Inc.*, 781 F.2d 1123 (5th Cir. 1986), the Fifth Circuit discussed 905(b) and 905(c) of the LHWCA as these provisions relate to the validity of indemnity agreements. The Court stated:

> Neither the 1972 amendments adding § 5(b) nor the 1984 amendments adding § 5(c) to the LHWCA proscribe non-vessel-related indemnity agreements. The distinction between vessels and non-vessels is well-established.... As [the LOIA] relates to non-vessel-related indemnity agreements, it is not inconsistent with "federal laws" and is enforceable.

*Knapp,* 781 F.2d at 1131. For the reasons given, this Court has determined that the contract at issue between McDermott and Capital/Landry was a **non-vessel-related indemnity agreement;** therefore, under the rationale of *Knapp, supra,* the LOIA applies to invalidate the indemnity provisions of the contract.

This Court is not unmindful that McDermott's potential liability to plaintiff is based in maritime law, or as McDermott argues, specifically under 905(b); however, this Court finds **that McDermott did not ad-** dress this potential maritime liability *in its contracts* with Capital and/or Landry. It did not contract for indemnification from the risk which befell Wagner. Had McDermott desired indemnity for claims arising out of the use of its vessel, it could have easily contracted for same in *its contract.* Had McDermott done so, the added indemnity provision would have been "vessel-related" and as such likely would have been valid under 905(c).

### Is the LOIA Inconsistent with 905(c)?

However, even if this Court were to find 905(c) applicable to the McDermott contract, then the issue of whether the LOIA is inconsistent with 905(c) would arise. On this issue, McDermott directs the Court to *Lewis v. Diamond Services Corporation,* 637 So.2d 825 (La.App. 1st Cir.), *writ denied,* 643 So.2d 159 (1994) in which the court held that the LOIA was inconsistent with 905(c) of the LHWCA. The Court concedes that the facts of that case are very similar to the instant case; however, the reasoning behind the decision is at best unclear, and as this court is not sitting as an *Erie* Court, *Lewis* is not binding.

McDermott also directs the Court to *Campbell v. Sonat Offshore Drilling, Inc.,* 979 F.2d 1115 (5th Cir.1992), *reh'g denied,* 986 F.2d 1420 (1993). In that case, the Fifth Circuit first determined the nature of the contract at issue, which it found to be **maritime.** The Court concluded:

> In sum, Campbell was injured while working as part of a crew contracted to travel upon and enable a special-purpose vessel to perform the function for which that vessel was designed. The vessel nature of the OFFSHORE TAURUS is therefore controlling in this case, and we find that the underlying contract between Frank's & UTP, a contract for services to enable the OFFSHORE TAURUS to complete its mission, is maritime in nature.

*Id.* at 1123–24. The Court then discussed 905(b) and 905(c). As the Court stated, 905(b) provides in pertinent part:

**10.** *See supra* note 2.

**11.** *See e.g.* cases cited under "Nature of Contract" section of this opinion.

In the event of injury to a person covered under the chapter caused by the negligence of a vessel, then such person, or anyone otherwise entitled to recover damages by reason thereof, may bring an action against such vessel as a third party in accordance with provisions of section 933 of this title, and the employer shall not be liable to the vessel for such damages directly or indirectly and any agreements or warranties to the contrary shall be void.

The Court explained that 905(b) protects employers of those engaged in shore-based maritime employment from indemnity claims brought by vessels in instances where the negligence of vessels causes injuries to the maritime employees. *Id.* The Court explained further that 905(c) was an "exception to 905(b)'s proscription of indemnification for instances in which *employers* and *vessels* enter reciprocal agreements to defend and indemnify each other." *Id.* (emphasis added) Those are not the facts before this Court. The indemnity provision nor the contract referenced the use of the vessel to house the workers.

When the Court in *Campbell* turned to an application of 905(c), it was not concerned with whether the LOIA was inconsistent with 905(c), rather the actual issue in the case was whether the "reciprocity requirement" of 905(c) was satisfied by the contract at issue in the case. Therefore, *Campbell* does not help this Court in determining whether the LOIA is inconsistent with 905(c). This Court does find significant, however, the fact that the *Campbell* court *first determined that the contract was maritime* and then turned to an application of 905(c). Here, the contract is *non-maritime;* therefore, maritime law would *not* apply to the contract.

The Court finds that the cases to which McDermott has directed the Court are not helpful in determining whether the LOIA is inconsistent with 905(c); therefore, an examination of the language of the statute itself is in order. It is difficult to determine whether the LOIA is inconsistent with 905(c) because of the language of 905(c):

Nothing contained in subsection (b) of this section shall preclude the enforcement according to its terms of any reciprocal indemnity provision whereby the employer of a person entitled to receive benefits under this chapter by virtue of Section 1333 of Title 43 and the vessel agree to defend and indemnify the other for cost of defense and loss or liability for damages arising out of or resulting from death or bodily injury to their employees.

Does this mean that under federal law these agreements *shall be* enforceable, or that they may be enforceable depending on whether state law or maritime law controls the contract.[12]

In various cases the Fifth Circuit has stated *in dicta* that 905(c) **"permits** certain indemnity agreements," *Knapp v. Chevron USA, Inc.,* 781 F.2d 1123, 1131 (5th Cir. 1986), that 905(c) **"sanctions"** mutual indemnity provisions between vessel owner and employer, *Fontenot v. Mesa Petroleum Co.,* 791 F.2d 1207, 1213 (5th Cir.1986), and that 905(c) **"removes § 905(b)'s proscription** to the extent that indemnity agreements between *vessels and employers* are reciprocal." *Doucet v. Gulf Oil Corp.,* 783 F.2d 518, 525 (5th Cir.), *reh'g denied,* 788 F.2d 250, *cert. denied,* 479 U.S. 883, 107 S.Ct. 272, 93 L.Ed.2d 249 (1986). In *Knapp,* the Fifth Circuit also stated, "as [the LOIA] relates to **non-vessel-related** indemnity agreements, it is not inconsistent with 'federal laws' and is enforceable." *Knapp,* 781 F.2d at 1131. In the context of *Knapp,* this statement leads this Court to conclude that as the LOIA relates to **vessel-related** indemnity agreements the LOIA is inconsistent with federal law. However, the contract at issue here is *not vessel-related.*

In sum, this Court finds that the type of indemnity provisions allowable under 905(c) are not present here, that the contract is non-maritime, is not vessel-related and that Louisiana law applies by virtue of its non-maritime nature or by virtue of the OCSLA. Therefore, McDermott is not entitled to defense or indemnity from Capital and/or Lan-

12. Commercial Union argues that the "language simply prohibits 905(b) from invalidating such agreements and specifically leaves state law or other law that might invalidate such arrangements in place." Supplemental Memorandum on 905(c), p. 4.

dry and/or its insurers. Further, this Court invites the parties to petition a higher court to give guidance on what the interplay of the law should be in a case with these unique facts, specifically what constitutes a vessel-related agreement and whether the LOIA is in fact inconsistent with 905(c).

### McDermott's Alternative Arguments

McDermott argues that if Louisiana law applied to this contract, which this Court has found does apply, then the contract between it and Capital is void based on the fraud as outlined under Louisiana Civil Code arts. 1953 and 1955. McDermott contends that Landry and Capital engaged in the "suppression of the truth" about their relationship; *i.e.*, that Landry provided Capital contract employees which Capital then provided to McDermott under the contract. It further maintains that although fraud would vitiate the contract, McDermott's rights to all available insurance coverages would be preserved. McDermott claims that it is an "alternate employer" covered by the Commercial Union policy [13] and that it is a named insured under the Storebrand policy of general liability.[14]

This Court need not rule on whether the Blanket Subcontractor's Agreement between McDermott and Capital was vitiated by fraud because even if this Court were to so find, such a result does not allow McDermott a back door method around the LOIA. The LOIA provides in paragraph G:

> G. Any provision in any agreement arising out of the operations, services, or activities listed in Subsection (c) ... which requires waivers of subrogation, additional named insured endorsements, or *any other form of insurance protection which would*

*frustrate or circumvent the prohibitions* of this Section, shall be null and void and of no force and effect.

La.R.S. 9:2780(G).

Thus, the LOIA invalidates McDermott's claims under the Storebrand and Commercial Union policies, as such claims would frustrate the prohibition of the LOIA. This Court finds the language of the LOIA as quoted above requires this Court to dismiss McDermott's contractual claims against Storebrand and Commercial Union.

### Conclusion

Accordingly, for the reasons stated above, this Court DISMISSES McDermott's contractual claims asserted against Capital, Landry, Storebrand, and Commercial Union.

### *ORDER*

Considering the foregoing memorandum ruling;

IT IS HEREBY ORDERED, ADJUDGED AND DECREED that counsel are to submit a judgment agreed to by all parties reflecting this Court's ruling to the Court for signature on or before December 30, 1994.

---

**13.** Commercial Union, Capital's workers' compensation and employer liability insurer, asserts that McDermott is not entitled to defense and indemnity as an additional assured or an alternate employer on the Commercial Union policy. Commercial Union also pleads application of the LOIA. After reviewing the documents and exhibits, the Court finds Commercial Union's argument persuasive. As Commercial Union points out, the Blanket Subcontractor's Agreement does not require an endorsement so that McDermott is an additional assured on the workers' compensation and employer liability insurance policy. Commercial Union also asserts that it insures only Capital's employees and not Landry's employees; therefore, McDermott is not entitled to

coverage under the "Alternate Employer" endorsement because Wagner was an employee of Landry. The Court has thoroughly reviewed the employment records and documents concerning Wagner's employment and finds that Wagner was an employee of Landry. Therefore, even if the LOIA does not invalidate McDermott's claims against Commercial Union, McDermott would still not be entitled to defense and indemnity from Commercial Union.

**14.** Storebrand does not dispute that McDermott is an additional assured on its policy for comprehensive general liability insurance; however, it pleads the application of the LOIA.