JiBYRNES, Judge.
Plaintiff, James Billy Ray Fontenot (“Fon-tenot”), and Defendants, Chevron U.S.A., Inc. (“Chevron”) and Dantzler Boat and Barge Company (“Dantzler”), appeal the trial court’s granting of summary judgment in favor of Intervenor, Aetna Casualty and Surety Company (“Aetna”). We affirm.
Fontenot was injured when he fell onto the deck of the transport vessel MW Big Chip as he attempted a “swing rope transfer” from a Chevron oil drilling platform. Fontenot was evacuating the platform, situated in the Gulf of Mexico, pursuant to Chevron’s emergency hurricane evacuation procedures. Fontenot subsequently brought suit against Chevron[1] and Dantzler, the operator of the MW Big Chip, alleging that they were negligent in forcing him to evacuate the platform via the transport vessel in rough weather conditions. Chevron filed a cross claim against Dantzler for any amount that Chevron might be cast in judgment.
_[jAt the time of the accident, Fontenot was employed by Hercules Offshore Drilling, Inc. (“Hercules”), a Chevron sub-contractor hired to perform work-over operations on the platform pursuant to a work-over contract executed by Hercules and Chevron. The work-over contract required Hercules to provide its employees with federal longshore and harbor workers’ compensation insurance and that Hercules waive its insurer’s right to subrogation. Pursuant to the provision in the work-over contract, Aetna, Hercules’ insurance carrier, waived its right to subrogation.
As a result of Fontenot’s injury, Aetna paid medical and wage compensation benefits totalling $139,589.31. Aetna intervened in Fontenot’s maritime tort action against *760 Chevron and Dantzler, seeking subrogation for the benefits it paid to Fontenot. Fonte-not subsequently settled his claims against Chevron and Dantzler for $437,500.00.
Fontenot and Aetna filed cross-motions for summary judgment concerning Aet-na’s entitlement to reimbursement of the longshore benefits it had paid to Fontenot. The resolution of this appeal involves only questions of law. There is no genuine issue of material fact. Fontenot argues that because Aetna waived its right to subrogation in the insurance policy, it is barred from reimbursement for those benefits. Aetna concedes that it waived its subrogation rights in the policy, but contends that its waiver is unenforceable under LSA-R.S. 9:2780, the Louisiana Oilfield Anti-Indemnity Act. In response, Fontenot argues that the work-over contract is maritime in nature and is thus not subject to the Louisiana Oilfield Anti-Indemnity Act. The trial court granted Aetna’s motion for summary judgment, prompting Fontenot, ^Chevron, and Dantzler to take this appeal. The settlement funds are presently on deposit with the clerk of court.
Fontenot, Chevron, and Dantzler argue that the work-over contract and the accompanying Aetna insurance policy are maritime contracts. Suits on maritime contracts arise under federal admiralty law and call for ap]Dlication of federal maritime law. Ro-drigue v. LeGros, 563 So.2d 248, 251 (La. 1990). Therefore, according to Fontenot, Chevron and Dantzler, the Louisiana Oilfield Anti-Indemnity Act is inapplicable and federal maritime law should govern resolution of this dispute.
In response, Aetna, relying on Herb's Welding, Inc. v. Gray, 470 U.S. 414, 105 S.Ct. 1421, 84 L.Ed.2d 406 (1985), contends that oil and gas exploration is not maritime commerce and thus the work-over contract is non-maritime. Because the work-over contract is not maritime, Aetna claims that it is not subject to the general maritime law. Rather, Aetna maintains that the work-over contract is subject to LSA-R.S. 9:2780, which invalidates certain indemnity agreements.[2] We agree.
^Regardless, the instant case is distinguishable from Lewis v. Diamond Servs. Corp., 637 So.2d 825, writ denied, 94-1638 (La. 10/14/94), 643 So.2d 159. In Lewis, plaintiff brought a 33 U.S.C. Section 905(b) action against Diamond, the owner of the barge to which he was assigned as a welder to provide services to an oil platform in the Gulf of Mexico. He was injured when he tried to cross over from the platform back to the barge. He sued Diamond for negligence. Diamond filed a third-party action against Crown Oilfield Services, Inc. and Crown’s insurer. It is unclear whether Crown was supplying services to Diamond or vice versa. Regardless, the written contract between them contained reciprocal indemnity provisions. Crown answered, arguing that the indemnity provision relied on by Diamond was ineffective by virtue of the Louisiana Oilfield Anti-Indemnity Act. The trial court rejected that argument and ruled that Crown was required to indemnify Diamond.
On appeal, the First Circuit affirmed. After reviewing the legislative intent of the Louisiana Oilfield Anti-Indemnity Act, as codified in LSA-R.S. 9:2780(A),[3] the court then *761 turned to an examination of whether the Louisiana |5law was displaced by federal maritime law. The court concluded that the provisions of the Louisiana Oilfield Anti-Indemnity Act were inconsistent with 33 U.S.C. Section 905(c)[4] and that therefore the indemnity provision was valid. Id. at 828-29.
That holding has no bearing on the instant case because 33 U.S.C. Section 905(c) refers only to indemnity agreements between the employer and the vessel. Such an agreement existed in Leivis. No such agreement exists in this case.
“Vessel” as used in 33 U.S.C. Sec. 905(c) refers to Dantzler in this case. The record contains no evidence that either Hercules or Chevron had a contract with Dantzler containing subrogation or indemnity provisions. This is hardly surprising because Dantzler’s services were obtained on an emergency | ebasis when the finer points of subrogation and indemnity agreements would have been the farthest thing from the minds of the parties involved. As there was no contract with the “vessel” (Dantzler) neither Lewis nor 33 U.S.C. Sec. 905(c) operate to remove Dantzler from the effect of the Louisiana Oilfield Anti-Indemnity Act.
Likewise, neither Lewis nor 33 U.S.C. 905(c) apply to the contract between Fonte-not’s employer Hercules and Chevron’s platform because Chevron is not a “vessel.” West v. Kerr-McGee Corp., 765 F.2d 526 (5 Cir.1985). Therefore, Louisiana state law is not superceded where Chevron is involved.
It is reasonable to assume that the waiver of subrogation was calculated into Aetna’s premium and that as a matter of normal contract law and public policy Aetna should be forced to honor its contract. However, by enacting the Louisiana Oilfield Anti-Indemnity Act the legislature for policy reasons curtailed by statute the normal freedom of the parties to enforce indemnity agreements. As neither Lewis nor 33 U.S.C. Sec. 905(c) apply to any of the parties before this Court, LSA-R.S. 9:2780 would make any waiver of subrogation by Aetna unenforceable.
Even assuming for the purposes of argument that Aetna’s waiver of subrogation against Chevron was enforceable, the result remains the same. Plaintiffs in this case had the burden of showing a waiver of subrogation existed in favor of all defendants, and plaintiffs failed to meet this burden with regard to defendant Dantzler. Regardless of the application of the ^Louisiana Oilfield Anti-Indemnity Act to Chevron, Aetna’s rights of subrogation against Dantzler would still be viable.
The record shows that Dantzler contributed $200,000.00 to the total settlement figure of $437,500.00. The law is clear that a partial waiver, such as the one here, does not act as a release of all defendants. LeBlanc v. Petco, Inc., 647 F.2d 617 (5th Cir.1991). Under these circumstances, Aetna is entitled to recover reimbursement of payments in the amount of $139,589.31 made to plaintiffs based on plaintiffs’ settlement with Dantzler.
For the foregoing reasons the judgment of the trial court is affirmed.

AFFIRMED.

PLOTKIN, J., dissents.

. John San Clement was also named as an individual defendant as the Chevron representative allegedly directing Fontenot’s evacuation. He was later dismissed on plaintiff's motion.

. LSA-R.S. 9:2780(B) provides:
Any provision contained in, collateral to, or affecting an agreement pertaining to a well for oil, gas, or water, or drilling for minerals which occur in a solid, liquid, gaseous, or other state, is void and unenforceable to the extent that it purports to or does provide for defense or indemnity, or either, to the indem-nitee against loss or liability for damages arising out of or resulting from death or bodily injury to persons, which is caused by or results from the sole or concurrent negligence or fault (strict liability) of the indemnitee, or an agent, employee, or an independent contractor, who is directly responsible to the indemnitee.

. The Legislature has opined that:
an inequity is foisted on certain contractors and their employees by the defense or indemnity provisions, either or both, contained in some agreements pertaining to wells for oil, gas, or water, or drilling for minerals which occur in a solid, liquid, gaseous, or other state, to the extent those provisions apply to death or bodily injury to persons. It is the intent of the legislature by this Section to declare null and void and against public policy of the state of Louisiana any provision in any agreement which requires defense and/or indemnification, for death or bodily injury to persons, where there is negligence or fault (strict liability) on *761 the part of the indemnitee, or an agent or employee of the indemnitee, or an independent contractor who is directly responsible to the indemnitee.

. The statute provides in pertinent part:
In the event that the negligence of a vessel causes injury to a person entitled to receive benefits under the Act by virtue of section 4 of the Outer Continental Shelf Lands Act, (43 U.S.C. 1333), then such person or anyone otherwise entitled to recover damages by reason thereof, may bring an action against such vessel in accordance with the provisions of subsection (b) of this section. Nothing contained in subsection (b) of this section shall preclude the enforcement according to its terms of any reciprocal indemnity provision whereby the employer of a person entitled to receive benefits under this Act by virtue of section 4 of the Outer Continental Shelf Lands Act (43 U.S.C. 1333) and the vessel agree to defend and indemnify the other for cost of defense and loss or liability resulting from death or bodily injury to their employees.
Id. at 828-29 (quoting 33 U.S.C. Section 905(c)).