Thomas Virgil DENNIS, III

v.

BUD'S BOAT RENTAL, INC., Taylor
Energy Co. & Pool Offshore Co.

Civil Action No. 96–2236.

United States District Court,
E.D. Louisiana.

Nov. 18, 1997.

Steven Brian Badeaux, New Orleans, LA, for Thomas Virgil Dennis, III.

Peter L. Hilbert, Jr., New Orleans, LA, for Taylor Energy Co.

Michael M. Christovich, New Orleans, LA, for Rig Telephones, Inc., d/b/a Data Com and Liberty Mut. Ins. Co.

## MINUTE ENTRY

McNAMARA, District Judge.

Before the court is defendant Taylor Energy Co.'s (**Taylor**) **Motion for Summary Judgment** against Third–Party defendants, Rig Telephones, Inc., d/b/a Data Communications, Inc. (Data Com), and Liberty Mutual Insurance Co. (Liberty). Data Com and Liberty both oppose this motion. Taylor has an additional **Motion for Summary Judgment** before the court against plaintiff Thomas Virgil Dennis, III. No opposition to this motion was filed. Also before the court is Third–Party defendants', Data Com and Liberty, **Cross–Motion for Summary Judgment** against Third–Party plaintiff Taylor. Taylor and defendant Pool Offshore Co. (Pool) oppose this motion. Taylor's **Motion for Summary Judgment** against Data Com and Liberty, and the Data Com/Liberty **Motion for Summary Judgment** against Taylor were before the court for hearing on **Wednesday, October 22, 1997.** Taylor's **Motion for Summary Judgment** against plaintiff Dennis was before the court for hearing on **Wednesday, November 5, 1997.** All three motions are before the court on briefs without oral argument.

## FACTUAL BACKGROUND

On May 26, 1996, plaintiff Thomas Dennis, an employee of Data Com, was allegedly injured during his transfer via personnel basket from the M/V MISS CATHERINE, a crew boat, to the M/V SEA LION where he was to install radio equipment. The M/V SEA LION was a utility vessel moored to the Platform Mississippi Canyon Block # 20, the site of the next two jobs the plaintiff was to perform.

Plaintiff was installing and repairing communication equipment for defendant Taylor Energy Company pursuant to an Offshore Master Service Contract between plaintiff's employer Data Com and Taylor, dated November 8, 1994. (Exhibit 2 attached to Data Com's Cross–Motion for Summary Judgment). The crane used in the personnel basket transfer was operated by another defendant, Pool Offshore Company, a drilling contractor with whom Taylor had executed a Daywork Drilling Contract ("Taylor/Pool contract") on May 1, 1996. (Exhibit C attached to Taylor's Motion for Summary Judgment).

The Offshore Master Service Contract between Taylor and Data Com ("Taylor/Data Com contract") contained provisions in which Data Com agreed to indemnify and defend Taylor against any claims brought by Data Com's employees. An additional clause of the Taylor/Data Com contract provided that Data Com would correspondingly defend Taylor for the contractual liability of Taylor to other subcontractors arising from work performed by Data Com.

The plaintiff brought suit against Bud's Boat Rentals (owner of the M/V MISS CATHERINE), Taylor (owner and operator of the platform Mississippi Canyon # 20 and time charterer of M/V SEA LION), and Pool (well driller on the platform and operator of the crane used during the transfer). Taylor brought a Third–Party complaint against Data Com and its insurer Liberty Mutual Insurance Company pursuant to the indemnification provisions of the Taylor/Data Com contract. Subsequently, because Pool demanded that Taylor defend and indemnify it from claims asserted by plaintiff against Pool (per the Taylor/Pool contract), Taylor amended its Third–Party complaint to demand that Data Com/Liberty hold Taylor harmless for Taylor's contractual obligation to Pool.

For the reasons that follow, the court finds that the Outer Continental Shelf Lands Act

(OCSLA)[1] applies to the third-party plaintiff's claims against the third-party defendants, thus making the Louisiana Oilfield Indemnity Act (LOIA)[2] operative and prohibiting the contractual indemnification of Taylor (and its subcontractors) by Data Com and/or its insurer, Liberty. The indemnification provisions of the Taylor/Pool contract are similarly prohibited. Additionally, the court finds that plaintiff's negligence claim against Taylor does not satisfy the elements of Louisiana's Duty–Risk analysis, and thus Taylor is not liable for plaintiff's injuries.

## ANALYSIS

### 1. Applicability of OCSLA and the LOIA

The most recent Fifth Circuit opinion dealing with an offshore accident where there is an indemnification provision in a master service agreement is *Hodgen v. Forest Oil Corp.*, 87 F.3d 1512 (5th Cir.1996). The Fifth Circuit clarified the approach for resolving the question of maritime law or OCSLA by adopting the three step PLT analysis.[3] Accordingly, this court analyzes the facts of the case and thus the viability of the Taylor/Data Com contract[4] indemnification provisions using those factors.

### A. The controversy must arise on a situs covered by OCSLA (i.e ., the subsoil, seabed, or artificial structures permanently or temporarily attached thereto).

Plaintiff Dennis alleges his injury occurred as the personnel basket lifted him from the deck of the M/V MISS CATHERINE for transport to the M/V SEA LION. Before clearing the starboard gunnel of the M/V MISS CATHERINE, the basket allegedly slid against the starboard rail, injuring plaintiff. Thus, the accident occurred on the deck of a *vessel* as plaintiff was in the act of transferring to another *vessel,* but while plaintiff was in physical contact with a personnel basket attached to a crane on the *platform.*

■ Following the guidelines of recent Fifth Circuit decisions vis à vis the situs requirement,[5] the court finds OCSLA situs present because of the plaintiff's physical connection to the platform via the personnel basket attached to the crane.[6] Moreover, the court recognizes that there is a trend to find OCSLA situs where "the work required by the contract was performed on an offshore platform" even if situs is not strictly, physically met. *Wagner v. McDermott, Inc.,* 899 F.Supp. 1551, 1556 (W.D.La.1994), *aff'd, Wagner v. McDermott, Inc.,* 79 F.3d 20 (5th Cir.1996).[7] The plaintiff in the case at bar was to do work both on and off the offshore platform. Thus, because there is both physical and contractual connection with the platform, OCSLA situs is met.

### B. Federal maritime law must not apply of its own force.

■ The second step of the PLT analysis looks at whether maritime law applies of its own force. The Fifth Circuit in *Hodgen*

---

1. 43 U.S.C. § 1333(a)(2)(A).

2. La.Rev.Stat. § 9:2780.B.

3. *Union Texas Petroleum Corp. v. PLT Eng'g,* 895 F.2d 1043, 1047 (5th Cir.1990). "1) the controversy must arise on a situs covered by the OCSLA (i.e., the subsoil, seabed, or artificial structure permanently or temporarily attached thereto); 2) federal maritime law must not apply of its own force; and 3) the state law must not be inconsistent with federal law." *Id.*

4. The court confines its analysis to the Taylor/Data Com contract. Once the Taylor/Data Com contract fails to qualify for maritime law applicability, the Taylor/Pool contract, which specifically envisioned an oil platform situs, is clearly in the OCSLA domain.

5. *See Hodgen,* 87 F.3d 1512 (finding situs when plaintiff hit deck of crew boat while holding onto swing rope attached to platform); *Hollier v. Un-ion Texas Petroleum Corp.,* 972 F.2d 662 (5th Cir.1992) (finding situs where plaintiff was crushed between jackup vessel and platform and then drowned).

6. The court notes that because the M/V SEA LION was moored to the platform, physical connexity to the OCS also existed with the utility vessel.

7. The *Wagner* court relied in part on a previous case, *Domingue v. Ocean Drilling & Exploration Co.,* 923 F.2d 393 (5th Cir.1991), *cert. denied,* 502 U.S. 1033, 112 S.Ct. 874, 116 L.Ed.2d 779 (1992), where the court ignored the fact that the injury occurred on a jackup rig which is generally categorized as a vessel, and found the relevant factor was that the service contract itself is non-maritime.

addressed this step by examining the relevant contract in light of the six Davis factors.[8] Accordingly, the court responds to the Davis questions according to the facts as gleaned from the documents:

1. What does the specific work order in effect at the time of injury provide?

There was no written work order but there was a work ticket completed by plaintiff. It specified three tasks: (a) run phone line from office (on platform) to drilling floor (part of the Pool rig on platform); (b) install radio equipment on the M/V SEA LION to communicate with platform; and (c) troubleshoot radio on the Taylor platform and replace if necessary.

2. What work did the crew assigned under the work order actually do?

Plaintiff indicated on the work ticket that he performed these three tasks. He spent approximately four hours on the M/V SEA LION and ten hours on the platform.

3. Was the crew assigned to work aboard a vessel in navigable waters?

Plaintiff was assigned to do some work on a vessel (M/V SEA LION) but the majority of work on a platform.

4. To what extent did the work being done relate to the mission of that vessel?

The mission of the utility vessel is to provide services to the platform. The plaintiff's job was to provide communication which would aid in fulfilling the vessel's service to the platform.

5. What was the principal work of the injured worker? He was to install and repair communication equipment.

6. What work was the injured worker actually doing at the time of injury?

He was not actually working but being *transported* from the crew boat to the utility vessel (the site of his first job).

Similar to the plaintiff in *Wagner* who slipped in the washroom facilities of the barge, the activity itself was not relevant in determining the nature of the contract. *Wagner*, 899 F.Supp. at 1555.

The court concludes that the evidence supports a finding that maritime law does not apply. Although the plaintiff performed work on both a vessel and a platform, the majority of the work was performed on the platform and all of the work ultimately benefitted the functioning of the platform and thus the fulfillment of its mission. Additionally, the nature of the work, that of installing and repairing communication equipment, is not inherently maritime.

### C. The state law must not be inconsistent with Federal law.

As to the third of the PTL factors, that the state law not be inconsistent with federal law, none of the related cases has found any inconsistencies in the application of Louisiana law, specifically through the LOIA (Louisiana Oilfield Indemnity Act), when OCSLA does apply. *Hodgen* at 1528. *See also, Graham v. Freeport Sulphur Co.*, 962 F.Supp. 82, 85 (E.D.La.1997). Thus, this final factor is met.

In conclusion, "[t]he proper test for deciding whether state law provides the rule of decision in an OCSLA case remains the three-part PLT test." *Hodgen*, 87 F.3d at 1526. While the three factors appear to be independent, conjunctive requirements, recent application suggests that the situs requirement is satisfied or not in the context of specific physical facts *and* how "salty" is the contract itself.[9] In recent cases where there have been incidents on the OCS and the incidents involved a vessel and a platform, courts have nullified the indemnification provisions of these Master Service Agreements through the application of OCSLA.[10]

---

**8.** *Davis & Sons, Inc. v. Gulf Oil Corp.*, 919 F.2d 313, 316 (5th Cir.1990):

1) what does the specific work order in effect at the time of injury provide? 2) what work did the crew assigned under the work order actually do? 3) was the crew assigned to work aboard a vessel in navigable waters? 4) to what extent did the work being done relate to the mission of that vessel? 5) what was the principal work of the injured worker? 6) what work was the injured worker actually doing at the time of the injury?

**9.** Although jackup drilling rigs have been historically categorized as vessels. Master Service Agreement and work order covering wireline services were not maritime in nature and thus an injury on the deck of a jackup rig was covered by state law. *Domingue*, 923 F.2d 393.

**10.** *Hodgen*, 87 F.3d 1512; *Hollier*, 972 F.2d 662; *Solet v. CNG Producing Co.*, 908 F.Supp. 375 (E.D.La.1995).

■ This court finds no evidence to support a contrary decision and finds the Taylor/Data Com contract to be non-maritime. Therefore, Louisiana law applies through OCSLA as surrogate federal law. The relevant Louisiana law is thus LOIA which prohibits the indemnification provisions such as those contained in the Taylor/Data Com contract. Data Com's motion for summary judgment, seeking dismissal of Taylor's Third–Party Complaint and Taylor's Amended Third–Party Complaint, is thus granted.

■ As to the Taylor/Pool contract, that contract is even further removed from the applicability of federal maritime law which would allow such indemnity. The Taylor/Pool contract clearly contemplated performance on an oil platform, thus coming squarely under the aegis of OCSLA and its indemnity provisions are unenforceable. Accordingly, Taylor's motion for summary judgment, that Data Com and its insurer Liberty be contractually bound to provide defense and indemnification to Taylor for its contractual liability to Pool, is thus denied.

## 2. Plaintiff's negligence claim against Taylor

■ Plaintiff brought his strict liability and negligence claim against Taylor in its capacity as owner and operator of the platform (Mississippi Canyon Block # 20). The Louisiana law governing the liability of the owner or custodian of a defective thing is Louisiana Civil Code article 2317.1.[11] The enactment of this law eliminated strict liability for custodians of things. Now, a plaintiff hurt by a thing in custody of another can recover under article 2317.1 upon a showing not only that the thing had a vice or defect, but also that the custodian was negligent.

Finding no evidence that the platform itself was defective, the court nevertheless examines the negligence aspect.

In order to assess whether Taylor "knew or should have known" of a defect presenting a potential hazard to the plaintiff, the court relies on the Louisiana Duty–Risk elements.[12] Because the evidence is uncontroverted that Taylor did not control or supervise either the crane operator or the personnel aboard the M/V MISS KATHERINE, and in the absence of actual or constructive knowledge by Taylor of a "dangerous condition," the court finds neither a duty owed by Taylor to plaintiff nor a breach of that duty. The plaintiff in his own deposition was unable to recite anything that Taylor did or did not do that played a role in or caused plaintiff's accident. (Ex. 2, attached to Taylor's Motion for Summary Judgment against plaintiff, pp. 189–191). Thus, plaintiff has not shown that Taylor's actions or inactions constituted a "cause in fact" of plaintiff's alleged injuries. Because none of the other elements is satisfied, the court does not need to reach a conclusion as to whether or not the plaintiff suffered damages. Having failed to submit evidence sufficient to defeat defendant Taylor's Motion for Summary Judgment, the plaintiff's claims against Taylor are dismissed.

## CONCLUSION

Having considered the memoranda of counsel and the applicable law, as to Defendant Rig Telephones Inc., d/b/a Data Com, and Liberty Mutual Insurance Company's **Cross–Motion for Summary Judgment** against Taylor Energy Company, and upon finding that no genuine issues of material

---

11. This law, effective April 16, 1996, some six weeks prior to plaintiff's accident, states

> The owner or custodian of a thing is answerable for damage occasioned by its ruin, vice, or defect, only upon a showing that he knew or, in the exercise of reasonable care, should have known of the ruin, vice, or defect which caused the damage, that the damage could have been prevented by the exercise of reasonable care, and that he failed to exercise such reasonable care. Nothing in this Article shall preclude the court from the application of the doctrine of res ipsa loquitur in an appropriate case.

12. *Roberts v. Benoit*, 605 So.2d 1032, 1051 (La. 1991). The elements are:

> (1) that the defendant had a duty to the plaintiff;
> (2) that the defendant's conduct breached this duty;
> (3) that the defendant's conduct was a "cause-in-fact" of the plaintiff's injuries;
> (4) that the defendant's conduct was a "legal cause" of the plaintiff's injuries; and,
> (5) that the plaintiff suffered damages.

fact exist and that Defendant is entitled to judgment as a matter of law;.

**IT IS ORDERED** that Defendants' **Cross-motion for Summary Judgment** against Taylor Energy should be and is hereby **GRANTED,** dismissing Taylor's **Third–Party Complaint and Amended Third–Party Complaint** against Rig Telephone and Liberty Mutual.

As to Defendant and Third–Party Plaintiff Taylor Energy Company's **Motion for Summary Judgment** against Rig Telephones, Inc. and Liberty Mutual Insurance Company,

**IT IS ORDERED** that Taylor's **Motion for Summary Judgment** against Rig Telephones, Inc. and Liberty Mutual Insurance Company should be and is hereby **DENIED.**

As to Defendant Taylor Energy Company's **Motion for Summary Judgment** against Plaintiff Thomas Virgil Dennis, III,

**IT IS ORDERED** that Taylor's **Motion for Summary Judgment** against Plaintiff Dennis should be and is hereby **GRANTED.**