EMILIO M. GARZA, Circuit Judge,
with whom JENNIFER W. ELROD and LESLIE H. SOUTHWICK, Circuit Judges, join, dissenting:
We are asked to determine whether the Outer Continental Shelf Lands Act choice-of-law provision, 43 U.S.C. § 1333(a)(2)(A), requires application of the Louisiana Oilfield Indemnity Act to an indemnity agreement triggered by an injury to a platform worker that occurred on a vessel on the high seas. Pursuant to a “focus-of-the-contract” test, and directly contrary to the Supreme Court’s admonishment that Congress meant for situs to be determined by locale and not by the status of the employee or his work, the majority says yes. There being no nexus between the indemnification agreement and the Outer Continental Shelf, and because a breach of a contract based exclusively on an injury on *790 the high seas cannot apply state law to the dispute, I would say no, and respectfully dissent.
I.
The choice-of-law provision under the Outer Continental Shelf Lands Act (“OCS-LA”) states in pertinent part:
To the extent that they are applicable and not inconsistent with this Act or with other Federal laws and regulations of the Secretary now in effect or hereafter adopted, the civil and criminal laws of each adjacent State now in effect or hereafter adopted, amended, or repealed are hereby declared to be the law of the United States for that portion of the subsoil and seabed of the outer Continental Shelf, and artificial islands and fixed structures erected thereon, which would be within the area of the State if its boundaries were extended seaward to the outer margin of the outer Continental Shelf ....
43 U.S.C. § 1333(a)(2)(A). Importantly, § 1333(a)(2)(A) declares the law of the United States[1] to be state law only on certain specific and fixed locations. OCS-LA’s primary concern is “to treat the artificial structures covered by the Act as upland islands or as federal enclaves within a landlocked State, and not as vessels, for the purposes of defining the applicable law because maritime law was deemed in-apposite to these fixed structures.” Offshore, Logistics v. Tallentire, 477 U.S. 207, 217, 106 S.Ct. 2485, 91 L.Ed.2d 174 (1986). Thus, § 1333(a)(2)(A) requires a geographical nexus before state law applies.
The pertinent state law at issue here is the Louisiana Oilfield Indemnity Act (“LOIA”), which “declare[s] null and void and against public policy of the state of Louisiana any provision in any agreement which requires defense and/or indemnification, for death or bodily injury to persons, where there is negligence or fault (strict liability) on the part of the indemnitee.” La.Rev.Stat. Ann. § 9:2780(A) (2009). Thus, if LOIA applies to the indemnity provision, it is unenforceable; if LOIA does not apply, the indemnity clause may be given effect.
OCSLA’s plain language extends all laws — “ civil and criminal” — of the adjacent state to “that portion of the subsoil and seabed of the outer Continental Shelf, and artificial islands and fixed structures erected thereon.” Put simply, § 1333(a)(2)(A) invites us to determine whether the situs of an indemnity agreement has a geographical nexus with the Outer Continental Shelf (“OCS”); if it does, we apply the relevant state law as surrogate federal law governing the agreement. If no situs is found, our inquiry begins and ends there.
II.
Grand Isle Shipyard, Inc. (“Grand Isle”) entered into a Master Maintenance and Construction Services Contract *791 (“MMCSC”) with BP American Production Company (“BP”) to provide repair and maintenance on fixed platforms on the OCS. Separately, Seacor Marine LLC (“Seacor”) and BP entered into a Vessel Charter Contract (“Charter”) pursuant to which Seacor supplied vessels and crew to BP in service of BP’s offshore activities. Both contracts contain nearly identical language designed to create reciprocal defense and indemnity obligations between and among BP contractors.
During the course of this contractual arrangement, Grand Isle employee Denny Neil was injured in a fall onboard the M/V SEA HORSE IV, a vessel owned and operated by Seacor and traveling on the high seas beyond Louisiana’s territorial waters. Neil was off duty, and the SEA HORSE IV was transporting Neil from his work platform to his residential platform when he fell. According to deposition testimony, neither Neil nor the SEA HORSE IV was in physical contact with the platform at the time of the incident.
Neil filed suit against Seacor under the Longshore and Harbor Workers’ Compensation Act, 33 U.S.C. § 905(b), a maritime statute, claiming negligent maintenance of the SEA HORSE IV resulting in his injury. Seacor settled this claim with Neil. After Neil filed his suit, Seacor tendered its defense and indemnity to Grand Isle pursuant to MMCSC paragraph 14.07 (emphasis added):
Contractor [Grand Isle] agrees to defend, indemnify, release and hold company’s [BP] other contractors [e.g., Seacor] harmless in accordance with the provisions of this Article 14 (to the extent such other Contractors execute cross indemnification provisions substantially similar to those contained in this section 14.07) from and against all claims, liabilities, damages, and expenses (including without limitation attorney’s fees and other costs of defense), irrespective of insurance coverages for the following:
(i) all injuries to, deaths, or illnesses of persons in contracted group CG:
... whether or not occasioned by or the result in whole or in part of the negligence or fault, whether sole, concurrent, joint, active, or passive, of company’s other contractors or any other entity or person or the unseaworthiness of any vessel ....
Grand Isle denied Seacor’s tender for defense and indemnity and filed a complaint in district court seeking a declaratory judgment that Louisiana law applies as surrogate federal law under OCSLA. Sea-cor answered, alleging that, inter alia, “an action pending in the United States District Court for the Southern District of Texas ... involves the dispute underlying this claim.” Grand Isle subsequently moved for summary judgment on the ground that LOIA applies as surrogate federal law under OCSLA to nullify the indemnification provision in Seacor’s contract with BP. Seacor filed a cross motion for summary judgment, arguing, inter alia, that Neil’s injury occurred on a vessel while it was navigating in and on the high seas, and, therefore, under federal maritime law, Seacor would be entitled to indemnification for Neil’s injury by Grand Isle per the terms of the MMCSC.
III.
State law may be applicable to this dispute in one of two ways: either ex proprio vigore or as surrogate federal law under OCSLA’s choice-of-law provision. Louisiana law does not apply to this dispute ex proprio vigore because Neil’s injury occurred eleven geographical miles offshore, well beyond Louisiana’s territorial waters. See 43 U.S.C. §§ 1301(b) (defining coastal “boundaries” of a state bordering the Gulf of Mexico as no farther than three marine *792 leagues (3.45 geographical miles) into the Gulf). If Louisiana law applies to this dispute at all, it is only because it is incorporated as surrogate federal law by § 1333(a)(2)(A).
OCSLA’s choice-of-law provision requires that a dispute have a geographical nexus with the OCS in order for state law to be applied as surrogate federal law. The dispute here involves breach of an indemnity provision incorporated within the MMCSC. Grand Isle neither alleges nor presents evidence in support of its motion for summary judgment that the MMCSC was written, confected, executed, or breached on the OCS. And although the MMCSC governs work done by Grand Isle on BP’s platforms (which could provide a nexus to the OCS), the dispute in this case neither implicates the work on the platforms nor has any other connection to the OCS. Accordingly, the mere fact that the dispute involves a provision within the MMCSC does not implicate the OCS such that OCSLA would apply.
Because the contract itself has no geographical nexus with the OCS, we look to the situs of the “controversy” to determine if § 1333(a)(2)(A) requires application of Louisiana law to this dispute. See Union Tex. Petroleum Corp. v. PLT Eng’g, 895 F.2d 1043, 1047 (5th Cir.1990). This is an indemnity dispute; therefore, the indemnity provision of the MMCSC informs this determination. The MMCSC states that Grand Isle will “defend, indemnify, release and hold company’s other contractors [e.g., Seacor] harmless ... from and against all claims, liabilities, damages, and expenses” resulting from “all injuries to, deaths, or illnesses of persons in [the] contracted group.” When a dispute arises under the indemnity provision, the underlying “injury” (or death or illness) becomes a contractual event which initiates contractual obligations under the indemnity agreement with Grand Isle. The location of the injury thus is critically important in our determination of whether, under § 1333(a)(2)(A), state law may be substituted as surrogate federal law to govern the dispute.
In the instant matter, since the indemnity agreement does not provide a geographical nexus with the OCS, § 1333(a)(2)(A) cannot be used to apply state law to the dispute. Neil’s “injury” occurred on a vessel sailing the high seas that was not connected to or in any way touching a platform or any other situs attached to the OCS. Without any geographical nexus to the OCS, the plain language of § 1333(a)(2)(A) prevents our application of Louisiana law, as surrogate federal law, to govern the adjudication of the dispute.
IV.
Supreme Court precedent, as well as our own OCSLA jurisprudence, confirms that situs is the pertinent inquiry in determining whether state law governs a particular dispute. An important early case, Rodrigue v. Aetna Casualty & Surety Co., 395 U.S. 352, 89 S.Ct. 1835, 23 L.Ed.2d 360 (1969), comprised two consolidated wrongful death cases, both of which involved accidents during the course of the decedents’ work on offshore platforms. One worker was killed when a crane mounted on an artificial island collapsed and toppled onto a nearby barge; the deceased had been working on the crane at the time of the collapse. The other worker was killed when he fell from a derrick affixed to an artificial island while performing a test on a drill pipe. To determine whether § 1333(a)(2)(A) required application of state law as surrogate federal law over these wrongful death actions, the Supreme Court first noted that Congress’s intent in enacting the statute “was to define a body of law applicable to the seabed, the subsoil, *793 and the fixed structures such as those in question here on the outer Continental Shelf.” Id. at 355, 89 S.Ct. 1835. “This approach was deliberately taken in lieu of treating the structures as vessels, to which admiralty law supplemented by the law of the jurisdiction of the vessel’s owner would apply.” Id. Concluding that these accidents occurred on “islands, albeit artificial ones,” the Supreme Court found § 1333(a)(2)(A) required application of state law in both disputes. Id. at 360, 89 S.Ct. 1835.
More recently, in Offshore Logistics v. Tallentire, 477 U.S. 207, 106 S.Ct. 2485, 91 L.Ed.2d 174 (1986), two workers employed on drilling platforms off the coast of Louisiana were killed when a helicopter transporting them to shore crashed into the Gulf of Mexico. Their families filed wrongful death suits against the helicopter owner/operator under the Death on the High Seas Act (DOHSA), OCSLA, and Louisiana law. Among the questions that the Supreme Court faced was whether the families’ DOHSA recovery could be supplemented by the remedies provided by state law through § 1333(a)(2)(A). In determining whether OCSLA’s choice-of-law provision applied state law to the wrongful death disputes, the Supreme Court first looked to Congress’s intent in enacting OCSLA, namely, “to treat the artificial islands covered by the Act as upland islands or as federal enclaves within a landlocked State, and not as vessels.” Tallentire, 477 U.S. at 217, 106 S.Ct. 2485. Maritime law, the controlling law on the high seas, was inapposite to disputes occurring on fixed platforms. Id. Federal law (or surrogate state law) was the appropriate choice of law governing disputes on artificial islands. Id. at 217-18, 106 S.Ct. 2485.
The Supreme Court specifically rejected the argument that state law, via § 1333(a)(2)(A), should apply to these workers’ wrongful death claims by virtue of their status as platform workers whose work occurred on OCS situses (artificial islands and fixed platforms). Id. at 218, 106 S.Ct. 2485. Reasoning that “Congress determined that the general scope of OCS-LA’s coverage, like the operation of DOH-SA’s remedies, would be determined principally by locale, not by the status of the individual injured or killed,” the Supreme Court looked to where the helicopter accident occurred to determine that the § 1333(a)(2)(A) requirements were not met and state law could not apply. Id. at 219, 106 S.Ct. 2485. In Tallentire, the situs of injury was on the high seas, with no nexus to the OCS. Consequently, § 1333(a)(2)(A) did not require application of state law as surrogate federal law to adjudicate the dispute.
The seminal OCSLA choice-of-law case in this Circuit is Union Texas Petroleum Corp. v. PLT Engineering, 895 F.2d 1043 (5th Cir.1990). In PLT, this court was asked to determine the applicable choice of law for a breach-of-contract dispute over PLT’s failure to pay subcontractors who worked to install a subsea pipeline pursuant to PLT’s contract with Union Texas. Id. at 1045M6. In reaching its conclusion, the court articulated three concerns — now deemed the three factors in the “PLT test” — to determine whether § 1333(a)(2)(A) permitted substitution of adjacent state law as surrogate federal law: “(1) The controversy must arise on a situs covered by OCSLA (i.e. the subsoil, seabed, or artificial structures permanently or temporarily attached thereto). (2) Federal maritime law must not apply of its own force. (3) The state law must not be inconsistent with Federal law.” Id. at 1047.
Nowhere in PLT did the court discuss a “focus-of-the-contract” test. Rather, the *794 court first determined whether the “controversy” in dispute — namely, a controversy over the service contract — had a nexus with the geographical areas that statutorily comprise the OCS. To make this determination, the court examined the contract, under which “PLT was to design, fabricate, and install a gas transportation system from a platform owned by UTP, and its partners” off the Louisiana coast. Id. at 1045. Because construction of the gas system gathering line was the work for which PLT failed to tender payment, the court centered its situs inquiry on the location of the gathering line. The court found that “the gathering line exactly fits the statutory definition of an ‘other device[ ] permanently or temporarily attached to the seabed ... erected thereon for the purpose of ... developing, or producing resources therefrom.’ ” Id. at 1047 (quoting 43 U.S.C. § 1333(a)(1)). Moreover, the court found that “[t]he locations where the substantial work [constructing the gathering line] was done were covered situses — the subsoil or seabed; an artificial island; and an installation for the production of resources.” Id. at 1047-48 (footnotes omitted). The court examined the location of “substantial work” performed on the pipeline because the dispute concerned PLT’s failure to pay subcontractors who worked on that pipeline. Id. at 1047. There was no other analysis that could logically inform an OCSLA situs inquiry in that particular breach-of-contract dispute over payment for pipeline construction. This “substantial work” analysis resulted in the court’s narrow holding that § 1333(a)(2)(A) “requires the application of Louisiana state law to non-maritime contract disputes arising from the construction of a gathering line on the seabed of the outer Continental Shelf.” Mat 1045.
A number of subsequent cases concerning indemnity disputes followed the three-part PLT test and concluded in each that Louisiana law would be given effect under § 1333(a)(2)(A) because the injuries occurred on the OCS. For example, in Smith v. Penrod Drilling Corp., 960 F.2d 456 (5th Cir.1992), the underlying injury was sustained by a Penrod employee working on an offshore platform affixed to the OCS. The employee was standing on the platform, leaning on horizontal fencing around the platform, in order to reach equipment on an adjacent barge. The fencing collapsed and the worker fell. The court determined that the indemnity dispute occurred on the OCS, noting that “[d]rilling platforms constitute ‘artificial islands’ under section 1333(a)(1).” Id. at 459. Because the “controversy” had a nexus with the OCS, § 1333(a)(2)(A) required application of state law as surrogate federal law over the indemnity dispute.
Similarly, in Hollier v. Union Texas Petroleum Corp., 972 F.2d 662 (5th Cir.1992), a platform worker slipped between the residential boat and the platform on which he worked; he was crushed and subsequently drowned. This court noted that platforms are generally considered OCS situses and therefore found that the indemnity agreement had a geographical nexus with the OCS because “Hollier was in physical contact with the platform at the time of his injury.” Id. at 665.
Likewise, Hodgen v. Forest Oil Corp., 87 F.3d 1512 (5th Cir.1996), concerned an indemnity dispute over an injury sustained by a platform worker while transferring by swing rope from a fixed platform to a nearby vessel. The worker landed hard on the boat’s dock, injuring his spinal cord. In undertaking its choice-of-law analysis, this court “[a]ssum[ed] ... that Hollier and Smith state a rule in this circuit providing that the situs of the controversy in an OCSLA indemnity clause case is the location of the accident.” Id. at 1527. The *795 court found Hollier “established that when an injured worker is in contact with both a platform and a boat, the first factor of the PLT test is satisfied.” Id. Because Hod-gen was “in contact” with the platform via the swing rope when he sustained his injury on the vessel’s deck, the court found an OCSLA situs present. Id. Therefore, “[ajssuming that Hollier properly states the rule for the situs requirement in contractual cases” — namely, that the location of the accident is the correct situs to analyze for § 1333(a)(2)(A) purposes — OCSLA choice of law determined that Louisiana law would govern the indemnity dispute as surrogate federal law because the injury had a geographical nexus with the OCS. Id.
In this same vein, Dennis v. Bud’s Boat Rental, Inc., 987 F.Supp. 948 (E.D.La.1997), concerned an indemnity dispute over injuries to a worker transferred via personnel basket from a vessel on the high seas to a vessel moored to a work platform. “[T]he accident occurred on the deck of a vessel as plaintiff was in the act of transferring to another vessel, but while plaintiff was in physical contact with a personnel basket attached to a crane on the platform.” Id. at 950. Undertaking a PLT analysis pursuant to this court’s decision in Hodgen, the court found a geographical nexus with the injury and the platform because the worker’s personnel basket was attached to a crane affixed to the platform. Id.
The district court could have properly ended its situs inquiry there. It did not. Instead, it noted “a trend to find OCSLA situs where ‘the work required by the contract was performed on an offshore platform’ even if situs is not strictly, physically met.” Id. (quoting Wagner v. McDermott, 899 F.Supp. 1551, 1556 (W.D.La.1994)). Based on this “trend” — notably inapplicable to the facts of the case before it, which involved an injury sustained while in contact with a personnel basket on an OCS platform — the Dennis court concluded that there was an OCSLA situs because the worker had “both physical and contractual connection with the platform.” Id. In doing so, the Dennis court unnecessarily muddied the clear connection between physical injury and situs in our OCSLA jurisprudence.
Admittedly, as the Dennis court acknowledged, there is an alternative line of cases that emerged from PLTs application of a “substantial work” analysis to determine the situs for OCSLA choice-of-law purposes. For example, Wagner v. McDermott involved a worker who allegedly suffered injuries when he slipped and fell on the deck of a residential barge adjacent to, but not connected to or a part of, a platform. 899 F.Supp. at 1552. This injury precipitated an indemnity dispute between the barge owner and several third-party defendants. The McDermott court first considered the situs analysis under Hollier, a case that was directly analogous to the facts of the indemnity dispute before it. Applying Hollier’s situs analysis, the court noted that the inquiry was “defined by where the plaintiffs accident occurred” and acknowledged that under this standard, “the ‘controversy’ did not take place on an OCSLA situs.” Id. at 1556. Accordingly, state law would not apply under § 1333(a)(2)(A).
Notwithstanding this conclusion, the McDermott court then purported to apply the three factors of the PLT test to arrive at a different outcome. It focused on the PLT court’s discussion of the “substantial work” situs inquiry: “[T]he situs requirement could [also] be met when ‘the locations where the substantial work pursuant to the contract was done were covered sitases.’ ” Id. Ignoring that PLT discussed this “substantial work” inquiry in *796 the context of a service contract dispute over payment for subsea pipeline work, not a dispute about an injury for which indemnification was sought — and contrary to Tállenürés admonishment that Congress meant for situs to be determined by the locale of the controversy and not by the status of the employee — the district court found the “substantial work” inquiry dis-positive. The district court determined that the situs of the indemnity dispute was the OCS, “as the work required by the contract was performed on an offshore platform.” Id. Consequently, the district court found Louisiana law applied as surrogate federal law to the indemnity dispute.[2]
These two lines of OCSLA situs inquiry in indemnity disputes emerging from PLT are clearly in conflict with each other. The jurisprudence is admittedly muddled and in need of a clear resolution. Unfortunately, the resolution now proposed by the majority does not follow the statutory requirements of § 1333(a)(2)(A).
V.
Today, the majority proposes a new rule to evaluate what it believes the OCSLA situs is, in a contractual dispute. Under this rule, “the focus-of-the-contract test is the appropriate test to apply in determining the situs of the controversy in contract cases, and we adopt that rule for the circuit.” Op. at 781. The “focus-of-the-contract” test would require us to look to where the contract contemplates that a majority of the work is to be performed. Id. The majority bases its holding on PLTs breach-of-contract situs inquiry, examining “where the substantial work was done.” Id. at 787. Therefore, according to the majority, “a contractual indemnity claim (or any other contractual dispute) arises on an OCSLA situs if a majority of the performance called for under the contract is to be performed on stationary platforms or other OCSLA situses enumerated in 43 U.S.C. § 1333(a)(2)(A).” Id. at 787. Significantly, the majority distinguishes this test from the OCSLA situs inquiry in tort cases, which would look simply to where the tort occurred to determine if § 1333(a)(2)(A) requires application of state law. Id. at 781.
However, there is no distinction between tort and contract in OCSLA’s choice-of-law provision. The majority states that “[o]ur case law ... requires us to distinguish between a contractual indemnity claim and the underlying incident.” Id. at 786. But nowhere in Rodrigue, Tallentire, or any of our OCSLA jurisprudence does case law support or demand that we consider the situs of an indemnity claim to be something other than where the underlying incident occurred, and there is no justification for doing so now.[3] Section *797 1333(a)(2)(A)’s language plainly does not invite an inquiry into a contract’s “focus” when determining whether a dispute occurs on the OCS. The majority takes pains to distinguish controlling Supreme Court OCSLA precedent in Rodrigue and Tallentire on the grounds that these were tort disputes rather than contractual disputes, and therefore the situs of the tort determined the OCSLA situs. However, nothing in either case calls for the distinction between tort and contract that the majority presently proffers. Rather, the focus has always been on the situs of the controversy.
As discussed above, Rodrigue concerned two consolidated wrongful death actions on stationary platforms attached to the OCS. Since these platforms were situses clearly delineated as part of the OCS under § 1333(a)(2)(A) (“artificial islands and fixed structures erected thereon”), the Supreme Court found that the “injuries” occurred on the OCS. Rodrigue v. Aetna Cas. & Sur. Co., 395 U.S. 352, 360, 89 S.Ct. 1835, 23 L.Ed.2d 360 (1969). Conversely, in Tallentire, the Supreme Court determined that § 1333(a)(2)(A) did not extend state law to platform workers killed in a helicopter crash while in transit over the high seas because “[b]y its terms, OCSLA must be ‘construed in such a manner that the character of the waters above the outer Continental Shelf as high seas ... shall not be affected.’ ” Offshore Logistics v. Tallentire, 477 U.S. 207, 217, 106 S.Ct. 2485, 91 L.Ed.2d 174 (1986) (quoting 43 U.S.C. § 1332(2)).
Notably, in Tallentire, the Supreme Court rejected the argument that § 1333(a)(2)(A) required application of state law to the cause of action because the decedents were platform workers. Id. at 218, 106 S.Ct. 2485. The Supreme Court stated:
The extension of OCSLA far beyond its intended locale to the accident in this case simply cannot be reconciled with either the narrowly circumscribed area defined by the statute or the statutory prescription that the Act not be construed to affect the high seas which cover the Continental Shelf ....
The character of the decedents as platform workers who have a special relationship with the shore community simply has no special relevance to the resolution of the question of the application of OCSLA to this case.
Id. at 218-19, 106 S.Ct. 2485 (emphases added).
The Supreme Court pinpointed § 1333(a)(2)(A)’s delineated geographical area — “that portion of the subsoil and seabed of the outer Continental Shelf, and artificial islands and fixed structures erected thereon” — to determine that a nexus between the situs of the injury and the OCS is required for OCSLA’s choice-of-law provision to apply. The Supreme Court noted that Congress intended for the proper situs inquiry under § 1333(a)(2)(A) to turn on the location of the incident giving rise to the claim, not on the status of the individual as a platform worker. Id. at 219, 106 S.Ct. 2485. The Supreme Court found “no special relevance” in the work the platform workers performed, or even the work contemplated by the contract under which the workers were employed, in determining the actual “situs” of the dispute. Instead, the Supreme Court found OCSLA’s choice-of-law provision inapplicable because the location *798 of the injury simply had no geographic nexus with the OCS.
The majority today nevertheless promotes a “focus-of-the-contract” test that regrettably employs the same status-based analysis that the Tallentire court specifically rejected. The work order on which the majority would have us “focus” has no connection whatsoever to the injury precipitating the instant dispute. Neil was not at work at the time of his injury. In evaluating where a work order contemplates the majority of the work will be performed, the majority is relying on the status of the workers performing under that work order to determine the OCSLA situs. Such analysis finds no support in Tallentire. Section 1333(a)(2)(A)’s situs inquiry is location-based, and if the triggering incident occurs off of the OCS, Tal-lentire requires that our OCSLA choice-of-law inquiry end there.[4] In the instant matter, the triggering incident occurred on board the SEA HORSE IV, which was close to, but not touching, Neil’s residential platform, a fact neither party disputes. This “injury” situs has no physical nexus with the OCS; therefore, OCSLA’s choice-of-law provision does not apply.
VI.
The issue of whether LOIA applies as surrogate federal law under OCSLA clearly implicates this court’s decision in PLT, which sets forth this Circuit’s controlling OCSLA choice-of-law three-prong test. As discussed above, the relevant inquiry for the purposes of this appeal is PLTs first prong, or whether “[t]he controversy ... arisefs] on a situs covered by OCSLA.” Union Tex. Petroleum, Corp. v. PLT Eng’g, 895 F.2d 1043, 1047 (5th Cir.1990). Significantly, the first prong of PLT requires a determination of where the controversy arose, not where the work is done. If we find that there is no OCSLA situs— that is, no nexus between the controversy and the OCS — our inquiry ends at PLT step one.
The facts of PLT itself required a different inquiry from our present case only because PLT involved a service contract. PLT was not an indemnity case; no underlying injury was involved. Rather, as the majority describes it, PLT was “a pure contract case to collect unpaid invoices for the installment of a subsea pipeline and to impose a statutory lien on the pipeline under Louisiana law.” Op. at 785. The PLT court’s choice-of-law analysis was necessarily informed by where the work on the subsea line was performed because payment for that work was the central dispute. No other location logically comprises the situs of the “controversy” over breach of payment for pipeline construction.
We simply do not have those facts before us in the instant indemnity matter. Neil was off duty as a platform worker when he was injured while being ferried to his residential platform. The location of his injury is not in dispute: he was on board the SEA HORSE IV. Therefore, we need look no further than the where the SEA HORSE IV was at the time of Neil’s injury to complete our situs inquiry. The parties do not contest that this vessel was on the high seas and not in contact with an OCSLA situs. Consequently, § 1333(a)(2)(A) does not permit Louisiana law, as surrogate federal law, to govern the adjudication of this dispute.
*799 Moreover, the majority’s holding improperly collapses PLTs step one inquiry (situs) into step two (whether federal maritime law applies of its own force) to form a singular test based solely on the “focus” of the dispute. We can properly consider the “nature” of the MMCSC in our § 1333(a)(2)(A) inquiry, but only in the analysis of PLT step two, to determine whether federal maritime law governs.
Davis & Sons v. Gulf Oil Corp., 919 F.2d 313, 315-17 (5th Cir.1990), elucidates the proper test for determining whether a contract is maritime or non-maritime, a pertinent inquiry to the second prong of the PLT test: whether federal maritime law applies to the contract of its own force. Notably, Davis states that “[wjhether the blanket agreement and work orders, read together, do or do not constitute a maritime contract depends, as does the characterization of any other contract, on the nature and character of the contract, rather than on its place of execution or performance.” Id. at 316 (internal quotation marks and citation omitted). To determine the “nature and character of the contract,” Davis analyzed six factors:
1) [Wjhat does the specific work order in effect at the time of injury provide? 2) [Wjhat work did the crew assigned under the work order actually do? 3) [Wjas the crew assigned to work aboard a vessel in navigable waters; 4) [Tjo what extent did the work being done relate to the mission of that vessel? 5) [Wjhat was the principal work of the injured worker? and 6) [Wjhat work was the injured worker actually doing at the time of injury?

Id.

These factors entail an inquiry into where the majority of a contract’s work was performed — in essence, a “focus-of-the-contract” inquiry, the very test the majority now proposes to determine whether a contract dispute occurs on an OCS situs. An evaluation of where a contract contemplates work will be performed necessitates an analysis of specific work orders, crew assignments, and whether these assignments relate to the mission of the vessel on which the injury occurred. Indeed, in determining whether Neil’s injury occurred on an OCS situs, the district court relied on these very factors:
At the time of the accident, Neil’s work for the day was complete, and he was proceeding to the living quarters platform. Neil’s work, which consisted mainly of platform repairs and grating repairs, was performed on platforms, not vessels. Neil’s sole relationship to the vessel was as a passenger; he did not contribute to the mission of the vessel in any manner. Further, the work tickets from April 7, 2005 to May 7, 2005 demonstrate that the work performed pursuant to the MMCSC was performed on platforms, not on vessels.
Grand Isle Shipyard, Inc. v. Seacor Marine, LLC, No. 06-1405, 2007 WL 2874808, at *3, 2007 U.S. Dist. LEXIS 71674, at *9 (E.D.La. Sept. 26, 2007).
Thus, to determine whether “substantial work” under the MMCSC was performed on OCS situses, the district court looked to specific work orders in effect at the time of Neil’s injury, the work Neil was assigned to do, the extent Neil’s work related to the mission of the SEA HORSE IV, Neil’s principal work, and what work (if any) Neil was doing at the time of the accident. That is, the district court employed a Davis inquiry, to determine not whether federal maritime law applies of its own force to a contract, but rather to come to the conclusion that Neil was injured on an OCS situs. The majority now adopts the district court’s misplaced Naws-factor OCSLA situs analysis and “agree[sj with the district court that the indemnity dis *800 pute in this case arose on an OCSLA situs because it is uncontested that a majority, if not all, of the work called for under the contract [MMCSC] was to be performed on stationary platforms on the OCS.” Op. at 789. The majority reaches this conclusion notwithstanding that the injury that is the basis of the indemnification action is wholly unrelated to any work being performed under the MMCSC.
However, if we examine the “nature and character of the contract” at both PLT step one (situs) and step two (whether federal maritime law applies), then we erase the distinction between the two inquiries required by both the statute and PLT. Indeed, neither Davis nor any of our controlling OCSLA precedent demands a “focus-of-the-contract” analysis for § 1333(a)(2)(A)’s situs inquiry. Given that, the majority’s new test is at best redundant, at worst irrelevant.
We must take care not to collapse these two distinct prongs of inquiry. In Hodgen, this court declined to “short-circuit” the situs inquiry by solely analyzing the dispute’s “focus” in determining whether OCSLA’s choice-of-law provision applied. Hodgen v. Forest Oil Corp., 87 F.3d 1512, 1525 (5th Cir.1996) (specifically rejecting the assertion that “the only inquiry relevant to the choice of law in matters arising out of oil exploration activities on the Outer Continental Shelf was the status of the contract as maritime or non-maritime,” referring to reasoning in Domingue v. Ocean Drilling & Exploration Co., 923 F.2d 393 (5th Cir.1991)). Instead, Hodgen held that “[t]he proper test for deciding whether state law provides the rule of decision in an OCSLA case remains the three-part PLT test.” Id. at 1526. As both § 1333(a)(2)(A) and the PLT test demand, this court must separate its inquiry and evaluate situs and contract status independently.
It cannot be overstated that the work contemplated by the MMCSC in the instant matter is factually and legally irrelevant to the indemnity provision; the incident (injury, death, or illness) triggers the indemnity provision. That is, there is no need to analyze where the “focus of the contract” takes place, i.e., “where the contract contemplates that most of the work will be performed,” when a discrete incident — the underlying injury — precipitates an indemnity dispute. The “work” simply has no connection to a determination of whether an indemnity dispute arises on the OCS because the “work” did not trigger the dispute. What is factually and legally relevant to the indemnity provision is the “injury” to an employee covered under the MMCSC. This injury triggers the dispute. Therefore, if the underlying injury did not occur on any structure affixed to the OCS, there is no OCS situs, and Louisiana law does not apply. In this case, the indemnity provision could apply anywhere because the injury, death or illness could occur anywhere. It so happened that the incident occurred away from any recognized OCS situs.
VII.
The majority’s “focus-of-the-contract” test, “look[ing] to where the contract contemplates that most of the work will be performed,” disregards Tallentire’s interpretation of § 1333(a)(2)(A), which classifies situs “principally by locale,” not by the “character” of the work under the contract. Offshore Logistics v. Tallentire, 477 U.S. 207, 219, 106 S.Ct. 2485, 91 L.Ed.2d 174 (1986). The test purports to provide “predictability and stability” in determining how OCSLA’s choice-of-law provision applies to indemnity contracts. However, the proposed test creates predictability only by equating the “controversy” with “majority of the work,” even though the *801 work performed under the contract does not inform the situs of an indemnity dispute. Tautologically, by assuming the “majority of the work” is the definitive situs test for choice of law in a contract dispute, the “choice of law” is determined by the test, rather than by the statute.
Additionally, the majority fails to provide guidance for application of its “focus-of-the-eontraet” test to future cases with different factual situations. Apparently the “contract” (among the many contracts involved in this dispute) that we are meant to be analyzing is a work order rather than the MMCSC itself, as the opinion indicates in a footnote (“Unless a contrary intent is reflected by the master contract and the work order, in determining situs in a contract case such as this, courts should ordinarily look to the location where the work is to be performed pursuant to the specific work order rather than the long term blanket contract.” Id. at 787 n. 6). But the opinion fails to address the potential challenges in this test’s application. Without any specifics, what comes off as a precise test on the pages of our reporter is, in fact, an amorphous term for lower courts and litigants to grapple with in future cases. Whose work order(s) are we analyzing: Seacor’s, as the party seeking indemnity, or Grand Isle’s, as the employer of the injured party?
Moreover, what do we mean by “majority”? Majority of hours worked? The majority proportion of work designated by the contract? Should we factor in the number of employees involved to make our determination? Is the “majority” of the work prospective or retrospective in application, or some combination thereof?
The majority proffers this “majority of the work” standard without sufficient substantiation for how it is to be applied, let alone why we are to be looking to work at all, when the “work” does not inform an indemnity dispute triggered by a discrete act (the underlying injury). At the very least, looking to the location of the injury for determining OCSLA situs in indemnity disputes is more precise given that an injury is a discrete event occurring in a specific location, and is the contractually anticipated event that triggers application of the indemnity provision in the first place. More importantly, this is also the situs test articulated by the Supreme Court in Rodrigue and Tallentire.
The majority fails to acknowledge that when a dispute arises under the indemnity provision, the underlying “injury” (or death or illness) is no longer merely a tort. The “injury” becomes a contractual event as the act pursuant to which a contractor may seek indemnification. The work contemplated by the MMCSC in the instant matter is factually and legally irrelevant to the indemnity dispute. Indeed, if the majority correctly applied their test and truly examined the “focus-of-the-contract” at issue, they would focus on the indemnity agreement, not a work order.
The majority’s attempt to harmonize our OCSLA jurisprudence with a predictable new rule accomplishes neither harmony nor predictability, and comes at the expense of a proper interpretation of § 1333(a)(2)(A)’s situs requirement. The statute outlines how we are to apply it, and we would be remiss to read more into it than that.
Accordingly, I dissent.

. OCSLA sets forth the geographical boundaries of federal jurisdiction as follows:
The Constitution and laws and civil and political jurisdiction of the United States are hereby extended to the subsoil and seabed of the outer Continental Shelf and to all artificial islands, and all installations and other devices permanently or temporarily attached to the seabed, which may be erected thereon for the purpose of exploring for, developing, or producing resources therefrom, or any such installation or other device (other than a ship or vessel) for the purpose of transporting such resources, to the same extent as if the outer Continental Shelf were an area of exclusive Federal jurisdiction located within a State ....
§ 1333(a)(1) (emphasis added). The parties do not dispute that OCSLA extends federal law to the areas of the OCS enumerated above.

. This court affirmed this decision solely on its analysis of whether maritime law applied and not with respect to the situs inquiry. See Wagner v. McDermott, Inc., 79 F.3d 20, 22 (5th Cir.1996) (adopting the district judge’s "holding that the contract is non-maritime in nature” and "assumfing] without deciding that [] OCSLA applies”).

. Notably, this statement about “our case law” requiring a tort-contract distinction in applying OCSLA's choice-of-law provision comes after a lengthy discussion of Hollier, Smith, and Hodgen, indemnity cases in which this court adopted the location of the underlying injury as the relevant situs for its § 1333(a)(2)(A) inquiry. Sumrall v. Ensco Offshore Co., 291 F.3d 316 (5th Cir.2002), cited by the majority to support its sweeping claim about our OCSLA jurisprudence, is not an OCSLA case. It has no bearing on the extent to which OCSLA extends state law to actions sounding in tort versus contract, and indeed, does not implicate OCSLA at all. Sumrall noted that an earlier case's indemnification dispute was “contractual in nature,” thereby distinguishing that from the underlying injury dispute at bar, which sounded in *797 tort. Id. at 319. However, this distinction does not support the majority's present decision to parse out tort and contract disputes for § 1333(a)(2)(A) purposes. Sumrall concerned an interpretation of the breadth of an indemnity clause and did not impute OCSLA's choice-of-law provision in any way.

. We agree with the majority that proper OCSLA choice-of-law analysis requires an inquiry into three areas: 1) the situs of the controversy; 2) whether federal maritime law applies of its own force; and 3) whether state law conflicts with federal law. See PLT, 895 F.2d at 1047.